1999 UT 21

Daniel L. EDGELL and Lanae Edgell, Plaintiffs, Appellants, and Cross–Appellees,

v.

Celeste CANNING and Mark Hammon, Defendants, Appellees, and Cross–Appellants.

No. 970497.

Supreme Court of Utah.

March 9, 1999.

Gerald S. Wight, Ogden, for plaintiffs.

Frank S. Warner, Ogden, for defendants.

HOWE, Chief Justice:

¶ 1 Plaintiffs Daniel Edgell and Lanae Edgell appeal from an adverse judgment. They brought this action against defendants Celeste Canning and Mark Hammon to determine the location of the boundary between their adjoining subdivision lots. Defendants cross-appeal from that part of the judgment which awarded plaintiffs an easement over part of defendants' lot where plaintiffs' cabin encroaches.

¶ 2 Plaintiffs are the owners of lot 248, Evergreen Park Subdivision in Weber County. Defendants are the owners of lot 249, which lies immediately west of lot 248. The east boundary of lot 249 is the west boundary of lot 248. Plaintiffs purchased their lot in May 1970 under an agreement requiring the seller to survey the lot so that its specific boundaries with regard to adjoining lots would be established. After plaintiffs were told that the survey had been completed, they took possession of the lot and observed certain rebar and T-posts that appeared to have been set in place at the corners of some of the lots with a lot number identified on each marker. In addition, it appeared to plaintiffs that someone had cut a number of swaths through the thick underbrush, both to facilitate the surveying and to clearly identify the boundaries of the individual lots. Relying upon these observations, plaintiffs commenced in 1973 to lay out and make improvements on their lot, beginning with a picnic table, a fire pit, a bridge across a stream, and the installation of a culinary water system. This was followed by the building of a two-story cabin in 1976. When these improvements were made, lot 249 was owned by Edward and Carma Bunnell, who made no objection except that Mr. Bunnell notified plaintiffs that he thought the picnic table appeared to be a few feet over the shared property line. He did not request its removal, and it stayed in place.

¶ 3 In November 1995, defendants purchased lot 249 and employed a surveyor, Dallas Buttars, to locate the boundaries of their lot. That survey placed the boundary between lots 248 and 249 further east than the line plaintiffs had previously determined, isolating some of plaintiffs' improvements

and running the boundary through a corner of their cabin. When defendants demanded that plaintiffs remove the improvements that were over the Buttars survey line, plaintiffs brought this action to have the location of the boundary determined. The trial court found that the line fixed by the Buttars survey was controlling because it comported with the legal description of the boundary on the official subdivision plat filed in the office of the recorder of Weber County. However, pursuant to an offer made by defendants, the court awarded plaintiffs an easement over that part of lot 249 where their cabin encroaches.

¶ 4 Plaintiffs appeal contending that the trial court should have fixed the boundary where they had located it when they constructed their improvements. Defendants cross-appeal, asserting that the trial court erred in granting plaintiffs an easement for the encroachment of their cabin because they did not accept the conditions of defendants' offer to grant them the easement.

■ ¶ 5 Plaintiffs first contend that the trial court erred in refusing to recognize that the survey made in 1970 when they purchased their lot took precedence over the later Buttars survey, particularly where they had relied upon it to their detriment. They assert that fixed monuments of a permanent nature, once located, take precedence over calls of courses and distances or plats. They rely on case law that an original survey laying out a platted subdivision, even though done in error, takes precedence over a later survey that is done correctly. *See Arnold v. Hanson*, 91 Cal.App.2d 15, 204 P.2d 97 (1949).

¶ 6 Much of the evidence and testimony presented at trial was whether the rebar and T-posts plaintiffs—and later two surveyors— found were set at the time of the original survey in 1964 when the subdivision was laid out or at the time of the survey supposedly made in 1970 when plaintiffs purchased their lot. In a finding of fact, the trial court stated: "There is insufficient evidence to establish the nature and purpose of the rebar and T-posts located south of lots 248, 249, and 250. The rebar and T-posts do not appear to be original or official monuments." The testimony of both surveyors supports

this finding of fact. Neither surveyor believed that the markers were set as part of the original survey. They opined that the markers had been in place for not more than twenty years, meaning they were set in about 1976—after both the original survey and *any* 1970 survey. Because there is evidence to support the trial court's finding of fact, we cannot and do not disturb it. Utah R. Civ. P. 52(a). Therefore, plaintiffs' contention that the trial court erred in this respect must be rejected.

■ ¶ 7 Plaintiffs next contend that the trial court erred in concluding that the boundary had not been fixed by acquiescence because there were "no monuments, no visible line and no mutual acquiescence in a line as the boundary." We find no error. One of the requirements of the establishment of boundary by acquiescence requires occupation up to a visible line marked by monuments, fences, or building. *See Monroe v. Harper*, 619 P.2d 323, 325 (Utah 1980). Here, there was no visible line. There was no fence, stream, wall, line of trees, or monument along the boundary line claimed by plaintiffs. Even the location of the picnic table upon which plaintiffs rely as a boundary marker was admittedly a few feet over the same boundary that they claim it marked.

■ ¶ 8 Plaintiffs next assign as error the refusal of the trial court to award them an easement over that part of defendants' property where their improvements encroach. We have held that a claim for a prescriptive easement must establish a use that is open, notorious, adverse, and continuous for at least twenty years. *See Marchant v. Park City*, 788 P.2d 520, 524 (Utah 1990). If the use is permissive, only a license results. *See Lunt v. Kitchens*, 123 Utah 488, 491, 260 P.2d 535, 537 (1953). Where use of another's land begins as permissive, the party asserting that it afterward became adverse has the burden to show when the use changed from permissive to adverse. *See id.*

¶ 9 The trial court found that plaintiffs' use of the picnic area was permissive based on testimony that Mr. Bunnell, one of the owners of lot 249 at that time, notified plaintiffs that he thought the picnic table appeared to be a few feet over the property line, but he said "it doesn't matter to me," and he did not request its removal. Plaintiffs do not assert that they then or at any later time disputed Mr. Bunnell's assertion. Moreover, there was testimony that plaintiffs and the Bunnells were in the habit of accommodating one another's use. Thus there is evidence to support the trial court's finding that the use was not adverse but was permissive.

¶ 10 Additionally, any claim by plaintiffs for a prescriptive easement over the land where their cabin encroaches must fail because the use was not for a period of twenty years. There is evidence that construction of the cabin did not begin until July 15, 1976. Defendants first protested plaintiffs' use of their property in December of 1995. Plaintiffs' complaint against defendants was filed in April 1996. Both dates fall short of the required twenty-year period.

■ ¶ 11 Plaintiffs next assert that the trial court based its judgment upon information other than that which was properly admitted as evidence at the trial. Specifically, they complain that in the course of a discussion with counsel for both parties at the trial regarding the differences between a warranty deed and a special warranty deed, the trial judge stated: "It's been so long since I've had real estate law, but the special form, as I recall, has fewer warranties I think." Later in the discussion, the court commented, "Swenson must have done a really good job on all of that." While nothing in the record identifies "Swenson," defendants' counsel suggests that the reference was to a professor at the University of Utah College of Law who taught classes in real property law.

■ ¶ 12 Plaintiffs additionally complain that the trial judge was previously acquainted with Carma Bunnell, who, along with her husband, owned lot 249 prior to selling it to defendants and also who attended the same church as the judge. However, we find no error. Plaintiffs do not suggest how the trial judge's reference to "Swenson" and his attendance at the same church with Mrs. Bunnell, if true, affects or undermines the validity of the court's findings and judgment.

Plaintiffs have failed to identify where in the record the trial judge made any reference to Mrs. Bunnell. No exploratory question was asked by plaintiffs' counsel to ascertain "Swenson's" identity and no objection was made to the court's reference to "Swenson." That failure to pursue the reference leaves us with no record from which to determine whether there was error. Error is not presumed. Furthermore, the lack of any objection to the judge's remark precludes us from considering it when it is raised for the first time on appeal. *See Wade v. Stangl,* 869 P.2d 9, 11 (Utah Ct.App.1994).

¶ 13   Lastly, plaintiffs assign as error the trial court's exclusion of an expert's written report and exclusion of the expert's testimony as to an ultimate legal conclusion. Plaintiffs called as an expert witness a surveyor, Randall J. Williford, and at the close of his testimony moved to admit into evidence a written summary of the testimony that he had just given. Plaintiffs cite no authority for their contention that the written summary was admissible after the expert had already testified. Assuming, however, it was error, it was not prejudicial because Mr. Williford testified at length, both on direct and cross-examination, and the written summary at most would have been simply duplicative of his oral testimony.

¶ 14   As for plaintiffs' complaint that the trial court refused to allow Mr. Williford to testify as to an ultimate issue, we again find no prejudicial error. Specifically, the trial court refused to allow Mr. Williford to testify as to whether markers placed at the time of an original survey of a subdivision would take precedence over the metes and bounds legal description of the lots. Again, assuming it was error, it could not have been prejudicial. Both parties and the trial court acknowledged that the markers placed by an original survey would take precedence but that principle was not controlling in this case because the trial court found, based on competent evidence, that the rebar and T-posts relied upon by plaintiffs had not been placed there at the time of the original survey.

■ ¶ 15   Turning now to defendants' cross-appeal, they contend that the part of the court's judgment which granted plaintiffs an easement for the corner of their cabin which encroaches upon defendants' property should be reversed. It thus becomes necessary to explain how the court arrived at its judgment in that regard. During closing argument, defendants' counsel stated that he and his clients had sympathy for plaintiffs because a corner of their cabin encroached on defendants' property, and they did not want to require the cabin to be moved. Defendants' counsel proposed that the court grant plaintiffs an easement to cover the encroachment on the condition that the court would include a provision in the judgment that would, in turn, give defendants a measure of protection against plaintiffs' complaining in the future that defendants did not meet required side yard requirements for any improvements they might build on their property. Defendants' counsel concluded:

> We understand we can't bind the zoning authorities and otherwise, but would give as much protection as we could to consider that house is encroaching and that the—those aspects of the zoning law that—that might control a distance between the house and other improvements of the [defendants] would be somehow ameliorated. We can't go too far in that direction, I understand, because we only have these parties before us, but maybe we could come up with some restrictive covenant language or something of that nature.

The trial court was receptive to defendants' offer and requested defendants' counsel to prepare the findings of fact, conclusions of law, and a judgment which would include an easement for the encroachment of the cabin. He suggested that counsel submit proposed language regarding the easement to plaintiffs' counsel and if he would agree upon the particular language, "I certainly would be inclined to approve it."

¶ 16   Accordingly, defendants' counsel prepared the findings of fact, conclusions of law, and the judgment. In conclusions No. 7 and 8, it is stated:

> No. 7 Plaintiffs should be awarded an easement, to include the land under the cabin, plus one foot around the cabin, so long as the cabin is standing. No further permanent construction is to take place within

the easement. Plaintiffs may conduct ordinary repair and maintenance of the cabin within the easement area. Plaintiffs should bear the cost of the survey to delineate the easement area.

No. 8 All persons and entities including Plaintiffs, and their heirs and assigns, should be estopped from enforcing zoning ordinances against the Defendants, and their heirs and assigns, due to the improper location of the Plaintiffs' cabin on lots 248 and 249.

Defendants now ask this court to reverse the conclusions of law and the judgment granting the easement to plaintiffs because plaintiffs did not agree to the conditions of the offer.

¶ 17 There is no merit to this contention. Defendants' counsel prepared the findings, conclusions, and judgment. He makes no explanation why he would provide for the easement if the conditions of defendants' offer had not been met. He was in full control of the preparation and submission to the court of the findings, conclusions, and judgment and could have omitted the award of the easement had he then not been satisfied. Nor does he explain why conclusion No. 8 and a similar provision in the judgment do not comply with defendants' offer. A party may not voluntarily submit proposed conclusions to the trial court and then challenge them on appeal. *See Smith v. DeNiro,* 28 Utah 2d 259, 260–61, 501 P.2d 265, 266 (1972).

¶ 18 Both parties seek attorney fees from the other side. These requests are denied as there is no basis for the same.

¶ 19 Judgment affirmed.

¶ 20 Associate Chief Justice DURHAM, Justice ZIMMERMAN, Justice RUSSON, and Judge DAVIS concur in Chief Justice HOWE's opinion.

¶ 21 Justice STEWART did not participate herein; Utah Court of Appeals Judge JAMES Z. DAVIS sat.