■ PETER CASINI et al., Appellants, v SEA GATE ASSOCIATION, Respondent, et al., Defendants. [692 NYS2d 676] —In an action, *inter alia,* pursuant to RPAPL article 15 to compel the determination of claims to real property, the plaintiff appeals from an order and judgment (one paper) of the Supreme Court, Kings County (Dowd, J.), dated July 1, 1997, which, *inter alia,* granted the motion of the defendant Sea Gate Association for summary judgment on its second counterclaim, dismissed the complaint insofar as asserted against Sea Gate Association, and declared the latter to be the owner of the subject property.

Ordered that the order and judgment is affirmed, with costs.

The defendant Sea Gate Association (hereinafter the Association) is a not-for-profit corporation formed approximately a century ago to own and operate the streets, beaches, and real property of the Sea Gate community, which is located at the tip of the Coney Island peninsula in Brooklyn. Sea Gate is a private community, enclosed by fences, which maintains its own police force and regulates access to the public through a gate at its principal entrance on Surf Avenue. At issue on this appeal is the ownership of an elliptically-shaped traffic island, built by the Association over 50 years ago, which lies at the confluence of Surf Avenue, Highland Avenue, Nautilis Avenue, and Beach 42nd Street. Although the Association improved the traffic island with trees and shrubbery and has continuously maintained it, in October 1977 the City of New York acquired title to this property through a tax foreclosure proceeding. Over 15 years later, on February 10, 1993, the plaintiff Peter Casini successfully bid at an in rem foreclosure sale for a parcel of land in Sea Gate which included the subject traffic island. A title report advised Casini that the City might be "out of possession" of the traffic island, which was enclosed by a fence, and that title to this area would not be insured. After finalizing the purchase, Casini transferred title to the Surf Avenue Development Corporation (hereinafter Surf Avenue Development). At about the same time, the Association granted the New York Telephone Company an easement permitting it to build a fiber optic cable box on the traffic island.

Casini and Surf Avenue Development subsequently commenced this action seeking, *inter alia,* a judgment declaring them to be the lawful owners of the disputed area, and enjoin-

ing the Association and the telephone company from trespassing on the property. The Association then asserted a counterclaim for a judgment declaring that it had acquired ownership of the traffic island area by adverse possession. The Supreme Court awarded the Association summary judgment on its counterclaim, and declared that it was the lawful owner of the subject property. We now affirm.

A party seeking to obtain title by adverse possession must establish that the property was either "usually cultivated or improved", or "protected by a substantial enclosure" for the 10-year statutory period (see, RPAPL 522 [1], [2]). In addition, as required by common law, the party must demonstrate, by clear and convincing evidence, that the possession of the parcel was hostile, under a claim of right, actual, open, notorious, exclusive, and continuous for the statutory period (see, Brand v Prince, 35 NY2d 634; Belotti v Bickhardt, 228 NY 296; Barnett v Nelson, 248 AD2d 656). Here, the Association satisfied its burden by producing affidavits and photographs which clearly and convincingly demonstrated that it surrounded the traffic island with a concrete curb, enclosed it with a low fence, and improved the land with trees, bushes, and plants, which it continuously maintained for at least 10 years before the City sold the property at auction in February 1993. Since the plaintiffs failed to submit evidentiary proof sufficient to raise an issue of fact as to whether the Association's possession of the property satisfied the elements of an adverse possession claim, the Supreme Court properly concluded that the Association had established its right to ownership of the disputed property.

Furthermore, we find no merit to the plaintiffs' claim that the Association could not acquire adverse possession to the property because the City foreclosed on the land in 1977 to satisfy tax liens. It is well settled that a municipality cannot lose title through adverse possession to property which it owns in its governmental capacity, or property which has been made inalienable by statute (see, City of New York v Wilson & Co., 278 NY 86, 96; West Ctr. Cong. Church v Efstathiou, 215 AD2d 753; Litwin v Town of Huntington, 208 AD2d 905; City of Tonawanda v Ellicott Cr. Homeowners Assn., 86 AD2d 118; Matter of City of New York [Mileau Corp.], 72 AD2d 745). In contrast, land which is held by a municipality in its proprietary capacity is not immune from adverse possession (see, City of Tonawanda v Ellicott Cr. Homeowners Assn., supra; Lewis v Village of Lyons, 54 AD2d 488). Thus, it has been observed that "[t]here is a well-recognized distinction between

lands held by the State as sovereign in trust for the public and lands held as proprietor only, for the purpose of 'sale or other disposition' * * * such lands only as the State holds as a proprietor may be lost to the State; it cannot lose such lands as it holds for the public, in trust for a public purpose [such] as highways, public streams, canals, public fair grounds" (*Lewis v Village of Lyons, supra*, at 490-491, quoting *People v Baldwin*, 197 App Div 285, 288, *affd* 233 NY 672).

Guided by these principles, we conclude that the fact that the City held title to the property between 1977 and 1993 for tax collection purposes does not defeat the Association's adverse possession claim. Significantly, the record is devoid of any evidence that the City ever formally dedicated the property for a public use (*cf., Litwin v Town of Huntington*, 208 AD2d 905, *supra*), or used it for a public purpose (*see, Town of N. Hempstead v Bonner*, 77 AD2d 567). Moreover, the City was not prohibited by statute from alienating the property. Furthermore, while Administrative Code of the City of New York § 11-420 provides that lands which the City acquires through in rem foreclosure proceedings shall "be deemed to be held by the City for a public use", this presumption of public use applies only for a period of three years from the date of the final judgment of foreclosure. Thus, in this case, the presumption of public use created by the Administrative Code expired on or about October 1980. Since the City continued to hold the property until 1993 without earmarking it for public use, municipal ownership did not bar the Association from establishing its right to title based upon proof that it adversely possessed the subject property for at least 10 years.

The plaintiffs' remaining contentions are without merit. Krausman, J. P., McGinity, Feuerstein and Smith, JJ., concur.