2003 UT 27

**Michael F. NYMAN, Plaintiff and Appellee,**

v.

**ANCHOR DEVELOPMENT, L.L.C., Donald R. Simon and Kathleen J. Simon, Richard N. Miller, and all other persons unknown, Defendants and Appellants.**

No. 20020077.

Supreme Court of Utah.

June 13, 2003.

a garage. Plaintiff, Michael Fred Nyman (Nyman), claims rights to this property through the doctrines of adverse possession and prescriptive easement. Nyman appeals from the trial court's grant of summary judgment to defendant, Richard N. Miller (Miller), the holder of record title to the property, and the trial court's order quieting title to the property in Miller.

## BACKGROUND

¶ 2 The two parties, Nyman and Miller, are record title holders of adjoining Park City properties. The property in this area is divided into twenty-five by seventy-five foot lots. Miller is the record title holder of Lot 17 of Block 76 while Nyman holds title to Lots 18 and 19. Miller's chain of title is as follows: Patent from the United States to Nims, April 1877; to Mason and Davis by quitclaim deed, April 4, 1877; to Thomas W. Ferry by quitclaim deed, November 22, 1879; to Edward P. Ferry by deed, July 9, 1880; to David McLaughlin by deed, December 22, 1882; to Summit County by tax sale, 1911; to W.I. Snyder, Trustee of Park City Townsite Company, by quitclaim deed, June 20, 1916; to Summit County by tax sale, December 21, 1935; to United Park City Mines Company by quitclaim deed, December 7, 1959; to Greater Park City Company by special warranty deed, June 11, 1971; to Ramshire, Inc., by special warranty deed, June 12, 1975; to Harry F. Reed et ux and Richard N. Miller et ux by special warranty deed, December 5, 1975; to Patricia K. Miller by quitclaim deed, September 2, 1977; to Richard N. Miller by quitclaim deed, May 29, 1998.

¶ 3 Nyman's predecessor in interest acquired his property by quitclaim tax deed from Summit County, April 9, 1937. The deed referred to the property conveyed as a "Lot on Block 76, Park City, Utah," which Summit County had acquired from John Backman in a tax sale in 1930. The Backmans had acquired this property through two deeds. First, in 1906, they acquired property described as a dwelling house "together with all out buildings and improvements belonging to said dwelling and sufficient space

Robert W. Adkins, Coalville, for plaintiff.

John R. Lehmer, Park City, Kimberly D. Washburn, Draper, Robert M. Felton, Salt Lake, for defendants.

DURHAM, Chief Justice:

¶ 1 The sliver of property at issue here is that part of Lot 17, Block 76, Millsite Reservation to Park City, Utah, that is occupied by

around the same for the convenient use and occupation thereof." Second, on May 15, 1916, they acquired property including Lots 18 and 19 "according to possession" by special warranty deed from W.I. Snyder.

¶ 4 Tax records indicate that no taxes were assessed against Lot 17 between 1942 and 1959, when Summit County held the title. From 1960 to the present, Miller and his predecessors in interest paid taxes assessed against Lot 17. Nyman and his predecessors in interest have paid taxes on their property, including improvements, since 1937.

¶ 5 Since at least 1948, Nyman and his predecessors have paid taxes on a garage, including the part of the garage that occupies the portion of Lot 17 at issue here.

¶ 6 Nyman initiated this action in Summit County district court, asserting his right to quiet title to the disputed property, or in the alternative, to a prescriptive easement.[1] The trial court granted Miller's motion for summary judgment on Nyman's claim and for an order quieting title in Miller.

## STANDARD OF REVIEW

¶ 7 "A trial court may properly grant summary judgment when 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.'" *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 10, 54 P.3d 1139 (quoting Utah R. Civ. P. 56(c)). When determining the propriety of a trial court's grant of summary judgment, "we review the trial court's legal conclusions for correctness, affording those legal conclusions no deference." *Ault v. Holden*, 2002 UT 33, ¶ 15, 44 P.3d 781. Additionally, " 'we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.'" *Id.* (quoting *DCM Inv. Corp. v. Pinecrest Inv. Co.*, 2001 UT 91, ¶ 6, 34 P.3d 785).

## ANALYSIS

¶ 8 Nyman asserts that the trial court erred by rejecting his claim to have acquired title to the disputed portion of Lot 17 through adverse possession, or, in the alternative, to a right to maintain his garage on the property through a prescriptive easement. We address each of these assertions in turn.

### I. ADVERSE POSSESSION

¶ 9 It is undisputed that Miller holds record title to all of Lot 17. Under Utah law, Miller is therefore "presumed to have been" in possession of Lot 17, and Nyman's "occupation of the property ... shall be deemed to have been under and in subordination to the legal title, unless it appears that" Nyman held and possessed the property "adversely to such legal title for seven years." Utah Code Ann. § 78–12–7 (2002). Nyman asserts that he has overcome this presumption for that part of Lot 17 underlying his garage through adverse possession of the land during the twenty-four year period, between 1935 and 1959, when Summit County owned Lot 17.

¶ 10 Because Nyman claims adverse possession of county-held land, we must first determine whether his claim is allowed under section 78–12–13 of the Utah Code, which states:

> No person shall be allowed to acquire any right or title in or to any lands held by any town, city or county, or the corporate authorities thereof, designated for public use as streets, lanes, avenues, alleys, parks or public squares, or for any other public purpose, by adverse possession thereof for any length of time whatsoever, unless it shall affirmatively appear that such town or city or county or the corporate authorities thereof have sold, or otherwise disposed of, and conveyed such real estate to a purchaser for a valuable consideration, and that for more than seven years subsequent to such conveyance the purchaser, his grantees or successors in interest, have

---

1. Although the original action was brought against a number of defendants, we are concerned here only with the dispute between Nyman and Miller. On June 22, 1998, Miller was substituted as a defendant in place of his ex-wife who no longer had any claim to the disputed property.

been in the exclusive, continuous and adverse possession of such real estate; in which case an adverse title may be acquired.

Utah Code Ann. § 78–12–13 (2002). Such restrictions on adverse possession claims against states or their political subdivisions stem from the "ancient doctrine" of *nullum tempus occurrit regi*, or "time does not run against the king." *Devins v. Borough of Bogota*, 124 N.J. 570, 592 A.2d 199, 201–02 (1991) (explaining the doctrine's rationale that "the king was too busy protecting the interests of his people to keep track of his lands and to bring suits to protect them in a timely fashion").

¶ 11 Utah's statute, like those in a number of other states, limits the restriction to situations in which the political subdivision has designated the land at issue for some public purpose. Nyman argues that Summit County was not holding the disputed portion of Lot 17 for any public purpose because the land was used for a privately-owned garage. Miller argues in opposition, however, that Summit County's 1935 acquisition of Lot 17 in a tax sale resulting from the former title holder's nonpayment of taxes did serve the public purpose of collecting taxes.

■ ¶ 12 This case therefore raises a novel issue before this court—whether a county's acquisition of property for nonpayment of taxes should be considered a public purpose within the meaning of section 78–12–13. Although some states have held that such tax takings do not remove land from claims of adverse possession,[2] we follow the majority of states that hold that "[a]dverse possession does not lie against land held by the county in connection with a tax sale." *Fred E. Young, Inc. v. Brush Mountain Sportsmen's Ass'n*, 697 A.2d 984, 992 (Pa.Su-

per.Ct.1997); *accord Bigler v. Graham County*, 128 Ariz. 474, 626 P.2d 1106, 1108 (Ct.App.1981); *Town of Sandwich v. Quirk*, 409 Mass. 380, 566 N.E.2d 614, 617 (1991); *Winstead v. Winstead*, 204 Miss. 787, 38 So.2d 118, 119 (1948); *Kellison v. McIsaac*, 131 N.H. 675, 559 A.2d 834, 837 (1989); *City of Edmonds v. Williams*, 54 Wash.App. 632, 774 P.2d 1241, 1243 (1989). A county, "in taking title to property for non-payment of taxes, acts solely in aid of the taxing authorities in collecting taxes against the property and for that purpose takes title to the property in its governmental capacity and not as a proprietor." *Bigler*, 626 P.2d at 1108. The county's purpose in acquiring and holding the property is thus the public purpose of safeguarding public revenues. We therefore hold that Nyman's claim to have established adverse possession against Summit County is subject to Utah Code section 78–12–13 and thus fails unless it "affirmatively appear[s]" that the county "sold, or otherwise disposed of, and conveyed" the disputed portion of Lot 17 to Nyman or his predecessors in interest. Utah Code Ann. § 78–12–13.

■ ¶ 13 Nyman asserts that Summit County did in fact convey the disputed portion of Lot 17 to Nyman's predecessor in interest Emil Nyman when it sold Emil Nyman the former Backman property. Nyman bases this argument on Utah Code section 59–2–1325, which states "[a] tax due upon improvements upon real property assessed to a person other than the owner of the real property is a lien upon the property and improvements." Utah Code Ann. § 59–2–1325 (2000). Under Nyman's theory, when the Backmans failed to pay taxes on their land, they also failed to pay taxes on improvements, including the garage. Although the Backmans did not own the property un-

---

2. *See, e.g., Goldman v. Quadrato*, 142 Conn. 398, 114 A.2d 687, 690 (1955) (affirming an adverse possession judgment where the city had acquired the disputed lot through foreclosure of a tax lien but had left the lot "legally fallow, a vacant parcel of land," "neither used for nor dedicated to any public purpose"); *Devins*, 592 A.2d at 200, 203–04 (holding that an adverse possession claim could be brought against a borough that had acquired title to the disputed property through foreclosure when the property was not currently "dedicated to or used for a public pur-

pose," but inviting the state legislature to revisit the issue); *Casini v. Sea Gate Ass'n*, 262 A.D.2d 593, 692 N.Y.S.2d 676, 678 (N.Y.1999) (holding that an adverse possession claim was not barred, even though the city had acquired title to the property through a tax lien, because the city had never "formally dedicated the property for a public use" and a city regulation limited the presumption that property acquired through foreclosure be deemed to be held for public use to three years after the date of foreclosure).

derlying the garage, Summit County acquired this property through its tax lien against the garage and subsequently conveyed both the garage and its underlying land to Nyman's predecessor in interest.

¶ 14 We need not decide whether Nyman's interpretation of section 59–2–1325 is valid. His argument fails because, according to appraisal cards, the garage as it now stands was not built until 1948.[3] Thus, Nyman did not show that the garage was present in 1930, when Summit County acquired the Backman property through a tax sale, or in 1937, when it sold the Backman property to Nyman's predecessor in interest. It is of course possible, as Nyman argues, that other structures stood on the same location before 1948 and that the perimeter of what became Nyman's property was established before that time.[4] However, Nyman cannot overcome the presumption in favor of the legal title holder through mere speculation. We cannot conclude that it "affirmatively appears" that Summit County conveyed the disputed portion of Lot 17 to Emil Nyman. We therefore hold that Nyman cannot establish adverse possession over the disputed portion of Lot 17 while Summit County held legal title to the lot.

¶ 15 Nyman further asserts that he can establish adverse possession over the disputed land after Summit County's 1959 quitclaim deed conveyed title of Lot 17 to United Park City Mines Company, Miller's predecessor in interest. Nyman's primary argument is that Miller never received legal title to the portion of Lot 17 underlying Nyman's garage because, at the time of the 1959 conveyance, the disputed land had already been conveyed to Emil Nyman. We have already rejected the latter assertion as mere speculation. Thus, we must also reject Nyman's

argument that the disputed portion of Lot 17 was legally severed from the remainder of the lot.

¶ 16 The severance argument also underlies Nyman's contention that the property taxes paid by Miller and his predecessors in interest on Lot 17 since 1959 were not taxes on the disputed portion of the lot. A party seeking to establish title by adverse possession has the burden of showing that he and his predecessors in interest have paid "all taxes which have been levied and assessed upon such land according to law." Utah Code Ann. § 78–12–12; *see Marchant v. Park City,* 788 P.2d 520, 523–24 (Utah 1990). Because nothing in the record shows that the disputed portion of Lot 17 was conveyed to Emil Nyman, we conclude that the taxes paid by Miller on Lot 17 covered the entire lot. Thus, Nyman cannot succeed in establishing adverse possession even after Lot 17 was no longer owned by Summit County. We therefore affirm the trial court's grant of summary judgment on this issue to Miller.

## II. PRESCRIPTIVE EASEMENT

¶ 17 The trial court also rejected Nyman's alternative argument that even if he is not entitled to adverse possession of the disputed portion of Lot 17, he has a right to a prescriptive easement allowing him to continue to use the property for his garage. The trial court held that Nyman's claimed right could not be construed as an easement because it would leave Miller, the holder of record title, with no rights at all in the disputed property. Nyman argues that the trial court erred by granting summary judgment to Miller on this issue.

¶ 18 "A prescriptive easement is created when the party claiming the pres-

---

3. Nyman argues that Summit County did not start keeping records of the improvements subjected to tax until 1948, suggesting that the garage may have been present before 1948 even though it did not appear on appraisal cards. However, Nyman provides no evidence for this assertion, and the appraisal cards that do mention the garage specifically state it was built in 1948.

4. Nyman points out that, according to a survey of Nyman's property, a section of a stone retain-

ing wall is the only improvement that currently lies on Lots 18 and 19. Trustee W.I. Snyder conveyed Lots 18 and 19 "according to possession" to the Backmans on May 15, 1916. Conceivably, the deed designated the wrong lot numbers as conveyed to the Backmans. However, on May 15, 1916, the date of Snyder's conveyance to the Backmans, Summit County held legal title to Lot 17. Certainly, Snyder's conveyance "according to possession" could not have included land that Snyder himself did not own.

criptive easement can prove that 'use of another's land was open, continuous, and adverse under a claim of right for a period of twenty years.'" *Orton v. Carter*, 970 P.2d 1254, 1258 (Utah 1998). Here, the term "use" implies an inherent distinction in the property rights conferred by an easement, on the one hand, and outright ownership, on the other. "A prescriptive easement does not result in ownership, but allows only use of property belonging to another for a limited purpose." *Marchant v. Park City*, 771 P.2d 677, 681 (Utah Ct.App.1989), *aff'd*, 788 P.2d 520 (Utah 1990). Thus, we have previously observed that:

> Whenever there is ownership of property subject to an easement there is a dichotomy of interests, both of which must be respected and kept in balance. On the one hand, it is to be realized that the owner of the fee title, because of his general ownership, should have the use and enjoyment of his property to the highest degree possible, not inconsistent with the easement. On the other, the owner of the easement should likewise have the right to use and enjoy his easement to the fullest extent possible not inconsistent with the rights of the fee owner.

*N. Union Canal Co. v. Newell*, 550 P.2d 178, 179 (Utah 1976). Maintaining such a balance between the rights of the fee title owner and a purported easement holder becomes impossible where the latter asserts a right to permanent exclusive occupancy of the fee title owner's land. We conclude that the right to keep a garage on another's property falls outside the scope of a prescriptive easement, and therefore the latter is simply unavailable to Nyman as an alternative in this case. Indeed, we know of no prior Utah case recognizing a prescriptive easement right to maintain a permanent structure on someone else's property.[5] Nyman argues that his use of the disputed portion of Lot 17 for a garage does not deprive Miller of all use and enjoyment of the land because Miller would still be able to claim the disputed portion as part of

his square footage "for development purposes." We do not believe that this ability is sufficient to allow Miller a genuine use and enjoyment of the property. Nyman also argues that the portion of Lot 17 occupied by his garage is simply insignificant because it is so small. We believe, however, that the garage's intrusion onto Lot 17 is not so small as to be truly inconsequential. We therefore hold that Nyman is not entitled to a prescriptive easement because the property right that he claims would effectively deprive Miller of all rights to which, as record owner, he is entitled.

## CONCLUSION

We affirm the trial court's grant of summary judgment to the defendant Miller and its order quieting title in Miller to Lot 17 in its entirety.

¶ 19 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Judge NEHRING concur in Chief Justice DURHAM's opinion.

¶ 20 Having recused himself, Justice RUSSON does not participate herein; Third District Judge RONALD E. NEHRING sat.

---

5. In *Edgell v. Canning*, 1999 UT 21, ¶ 8, 976 P.2d 1193, this court considered a plaintiff's claim of "an easement over that part of defendants' property where [plaintiff's] improvements encroach." However, we rejected the claim on other

grounds. *Id.* at ¶ 10; *see also Marchant v. Park City*, 788 P.2d 520, 524 (Utah 1990) (rejecting plaintiff's claim of an easement on property where defendant had permitted plaintiff's predecessor to build a house).