*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2014 UT 23**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

DANA D. COLVIN and SHAWN COLVIN
*Plaintiffs and Appellants,*

*v.*

JOSEPH GIGUERE,
*Defendant and Appellee.*

No. 20120809
Filed June 20, 2014

Fourth District, Spanish Fork
The Honorable Donald J. Eyre, Jr.
No. 110300141

Attorneys:

Kent A. Higgins, Pocatello, ID for appellants

Richard K. Glauser, Michael W. Wright, Sandy, for appellee

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE LEE joined.

JUSTICE PARRISH, opinion of the Court :

### INTRODUCTION

¶ 1    While returning to Utah from a work project in Maryland, Kelly Colvin was killed in an automobile accident. Joseph Giguere, Colvin's coworker, was driving the vehicle in which Colvin was a passenger when the accident occurred. Colvin's widow and son brought this action against Giguere, arguing that Giguere's negligence caused the accident. The district court granted summary judgment in favor of Giguere, ruling that the accident occurred in the course of Colvin and Giguere's employment, rendering workers' compensation the Colvins' exclusive remedy. The Colvins appeal.

¶ 2    Although employees are generally not within the course of their employment while traveling to or from their place of work, Giguere and Colvin were not merely commuting during their return trip from Maryland, but were on a special errand for their employer. Because the accident that killed Colvin occurred while he and Giguere were carrying out the special errand, workers' compensa-

tion is the Colvins' exclusive remedy. We therefore affirm summary judgment dismissing the Colvins' suit.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 3    Kelly Colvin and Joseph Giguere were employees of Advanced Millwork Installation (Advanced), a custom millwork company located in Lehi, Utah. Colvin had worked for Advanced since 2006 and acted as Advanced's foreman. In August of 2009, Advanced sent Colvin and a second employee to Virginia and Maryland to complete two cabinet-installation projects. Colvin and the second employee drove to Virginia in a van owned by Advanced's owner, Richard Thompson. The van had Advanced's logo printed on it, and Advanced paid for the van's insurance and claimed either the van's mileage or its depreciation as a business expense. Colvin was the only scheduled driver on the van's insurance policy, and Thompson allowed Colvin to drive the van for both business and personal use.

¶ 4    After about a month of working on the Virginia and Maryland projects, the second employee quit. Advanced then sent Giguere to Virginia to assist in completing the projects. At some point prior to departing for or after returning from the East Coast projects, Giguere signed an employment contract with Advanced, which provided in part that Advanced would pay for the fuel and time it takes an employee to travel to an out-of-town job site, but would not pay for the time it takes to travel back from the job site. Consistent with the contract, Advanced paid for Giguere to fly to Virginia but had not made explicit plans for Giguere's return trip to Utah once the projects were completed. Thompson testified, however, that he had always intended for Giguere to return to Utah with Colvin in the company van.

¶ 5    Shortly before Colvin and Giguere finished the Maryland project, Thompson called Colvin and asked him if he would be willing to fix some problems on an Advanced project in Spanish Fork, Utah, before returning to his home in Pocatello, Idaho. Colvin agreed. Thereafter he and Thompson decided that Colvin and Giguere would drive to Utah together, that Colvin would drop off Giguere at his home in Springville, Utah, and that Colvin would then head to Spanish Fork to complete the Advanced project before driving home to Pocatello.

¶ 6    On October 11, 2009, at around three o'clock in the morning, Colvin and Giguere finished the project in Maryland. Approximately two hours later, they began their return trip to Utah.

To facilitate a quick return, Colvin instructed Giguere that they would drive straight through to Utah without stopping to rest and that each would take turns driving while the other slept. At 4:36 a.m. on October 12, 2009, Giguere was driving through Kansas while Colvin was sleeping in the passenger seat. Giguere testified that he thought he saw something the size of a large dog entering the highway in front of the van and swerved to miss it, causing the van to roll one-and-a-half times before landing on the driver's side in a ditch. The police accident report indicates that it had been lightly raining and that the road was wet when the accident occurred. Colvin was fatally injured in the accident.

¶ 7    In November of 2009, Giguere submitted an application for benefits with Auto-Owners Insurance Company (Auto-Owners), the company that insured Advanced's van, to cover his accident-related medical expenses. On the application, Giguere answered "no" to the question of whether he was in the course of his employment at the time of the accident. Mrs. Colvin also filed a claim with the insurance provider. Auto-Owners denied Mrs. Colvin's claim after concluding that her husband's death was a work-related injury covered under workers' compensation. In March 2010, Thompson prepared and submitted workers' compensation claims on behalf of both Giguere and Mrs. Colvin.

¶ 8    The Workers Compensation Fund (WCF) accepted Mrs. Colvin's claim as valid and on March 18, 2010, tendered her workers' compensation benefits. But Mrs. Colvin, under the advice of counsel, refused the tender "pending final resolution of planned civil litigation against [Giguere]." Over one year later, the WCF informed Mrs. Colvin by letter that the fund "had been given the go ahead by [Mrs. Colvin's counsel] to proceed with the processing of benefits." Mrs. Colvin has been receiving monthly workers' compensation benefits since that date.[1]

¶ 9    On February 15, 2011, the Colvins filed their complaint in this matter. The complaint alleged that Colvin's death was proximately caused by Giguere's negligent driving. After some discovery, Giguere filed a motion for summary judgment, arguing that he and Colvin were coemployees in the course of their employment at the time of the accident and that the exclusive remedy provision of the Workers' Compensation Act barred this suit. *See* UTAH CODE

---

[1] The record does not reflect whether Auto-Owners or the WCF accepted Giguere's applications for benefits.

§ 34A-2-105. The Colvins filed a cross motion for summary judgment on the same issue. They argued that, because Giguere was driving home at the time of the accident, he was not in the course of his employment and the exclusive remedy provision does not apply.

¶ 10 Following a hearing, the district court granted Giguere's motion for summary judgment and denied the Colvins' motion. It recognized that Utah courts have adopted the going-and-coming rule, which provides that workers' compensation does not cover accidents that occur while employees are coming to or going home from their workplace. But it ruled that two exceptions to the rule apply in this case. Specifically, the district court held that Colvin and Giguere fell "squarely within" the special errand and the continuous coverage exceptions to the going-and-coming rule and therefore "would have been considered to be within the course and scope of their employment" at the time of the accident. The district court thereafter dismissed the suit, ruling that the Workers' Compensation Act's exclusive remedy provision barred the Colvins' negligence action against Giguere.

¶ 11 The Colvins appeal. They argue that the district court erred in ruling that Giguere and Colvin were in the course of their employment at the time of the accident. We disagree and therefore affirm the district court's order dismissing this suit. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶ 12 In this case, the district court ruled on summary judgment that Colvin and Giguere were on a special errand for their employer at the time of the accident. Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." UTAH R. CIV. P. 56(c). Because entitlement to summary judgment is a matter of law, we review a summary judgment for correctness, giving no deference to the district court. *Nyman v. Anchor Dev., L.L.C.*, 2003 UT 27, ¶ 7, 73 P.3d 357. We also "view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.* (internal quotation marks omitted). Even where the "underlying objective facts" are not in dispute, summary judgment may not be appropriate where the inferences drawn from the underlying facts are disputed. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). However, summary judgment will still be appropriate if "reasonable minds cannot differ" as to the inferences to be drawn from the undisputed facts. *Id.*

## ANALYSIS

¶ 13 The Workers' Compensation Act (WCA or Act) provides that compensation under the Act is an employee's or an employee's family or heirs' "exclusive remedy against the employer . . . [and any] employee of the employer . . . on account of any accident or injury or death" sustained by the employee "in the course of or because of or arising out of the employee's employment, and an action at law may not be maintained against an employer or . . . [any] employee of the employer based upon any accident, injury, or death of an employee." UTAH CODE § 34A-2-105(1). The WCA itself does not define the phrase "in the course of or because of or arising out of" an employee's employment. However, our case law has considered whether various work-related activities are "within or beyond a person's 'course of employment,'" and we have developed tests to assist in making such determinations. *Jex v. Utah Labor Comm'n*, 2013 UT 40, ¶ 17, 306 P.3d 799.

¶ 14 One such test is the going-and-coming rule, which recognizes that "traveling to and from work is [generally] not part of the employment and is not covered by Workmen's Compensation." *Lundberg v. Cream O'Weber/Federated Dairy Farms, Inc.*, 465 P.2d 175, 176 (Utah 1970). We have, however, recognized certain circumstances under which employees traveling to or from work are in the course of their employment, and an accident occurring under these circumstances will be within the scope of the WCA's coverage. In this case, the district court concluded that two such exceptions[2] to the going-and-coming rule apply. Specifically, it held that Colvin and Giguere were on a special errand for their employer during their return drive from the East Coast and were therefore within the course of their employment at the time of the accident. *See State Tax Comm'n v. Indus. Comm'n of Utah*, 685 P.2d 1051, 1054–55 (Utah 1984) (defining the special errand exception). The district court also held that because Colvin and Giguere's work entailed travel away from

---

[2] We agree with the Arkansas Supreme Court that "[t]he 'going and coming' rule is best viewed as an analytical tool" that is "subordinate to the preeminent consideration, which is whether the employee was directly or indirectly advancing the interests of the employer at the time of the injury." *Moncus v. Billingsley Logging & Am. Ins. Co.*, 235 S.W.3d 877, 881–82 (Ark. 2006). Therefore, the so-called exceptions to the going-and-coming rule simply describe situations in which an employee's journey to or from his place of work advances the interests of his employer.

their employer's premise, they fell within the continuous coverage exception, rendering them "within the course of their employment continuously during the trip" to and from Utah. *Buczynski v. Indus. Comm'n of Utah*, 934 P.2d 1169, 1173 (Ut. Ct. App. 1997) (internal quotation marks omitted). Based on these two exceptions, the district court held that Giguere was immune from suit under the WCA's exclusive remedy provision.

¶ 15 The Colvins contend that the district court erred in applying the exclusive remedy provision. They first argue that the district court dismissed "too swiftly" the relevance of the written contract between Giguere and Advanced in determining whether Giguere was in the course of his employment at the time of the accident. The Colvins rely on a provision of Giguere's employment contract that states, "Advanced . . . will pay for fuel and the time it takes to drive to [an out-of-town] job site," but "doesn't pay for the time it takes to drive back." Because Giguere was not being paid during the return trip, the Colvins argue he could not have been in the course of his employment. The Colvins also argue that even if Giguere's employment contract is not controlling, the district court erred in holding that the special errand and continuous coverage exceptions to the going-and-coming rule apply in this case.

¶ 16 We uphold the district court's determination that both Giguere and Colvin were in the course of their employment at the time of the accident.[3] Notwithstanding the language of Giguere's

---

[3] Under the plain language of the WCA's exclusive remedy provision, it could be argued that the "in the course of or because of or arising out of" clause refers to the injured employee (in this case Colvin) but not the fellow employee (in this case Giguere). *See* UTAH CODE § 34A-2-105(1) (providing that the WCA is an injured employee's exclusive remedy against *any* fellow employee for an accident that occurred in the course of or because of or arising out of the *injured employee's* employment). In other words, to be immune from suit, Giguere need not show that he was in the course of his employment at the time of the accident, but rather only that he met the statutory definition of "employee." *See id.* § 34A-2-104(1)(b) (defining "employee" as "a person in the service of any employer . . . under any contract of hire"); *see also Kobak v. Sobhani*, No. 94764, 2011 WL 94496, at *3 (Ohio Ct. App. Jan. 6, 2011) (applying a similar workers' compensation statute and explaining that, to receive the

(continued...)

employment contract, Giguere and Colvin were engaged in the important activity of returning Advanced's assets to Utah. Furthermore, Giguere was assisting Colvin in the onerous task of driving across the country so that Colvin could arrive at the Spanish Fork project more quickly. Therefore, Colvin and Giguere were on a special errand for their employer and were in the course of their employment at the time of the accident.[4] Because we hold that Giguere and Colvin were in the course of their employment under the special errand exception, we need not consider whether the continuous coverage exception also applies.

## I. GIGUERE'S EMPLOYMENT CONTRACT IS NOT DISPOSITIVE OF WHETHER HE WAS IN THE COURSE OF HIS EMPLOYMENT AT THE TIME OF THE ACCIDENT

¶ 17 We first address the Colvins' argument that whether Giguere was in the course of his employment at the time of the accident "hinges on [his] employment contract." The Colvins rely on the provision of Giguere's employment contract that denied him pay for time spent returning from an out-of-town job and reason that, because Giguere was not being paid at the time of the accident, he was not in the course of his employment.

¶ 18 Although contractual provisions may be relevant in assessing workers' compensation coverage, they are not necessarily determinative. Rather, the parties' actual dealings are the best

---

[3](...continued)
protection of the exclusive remedy provision, a fellow employee need not show that he was in the course of his employment at the time of an accident, but only that he was an employee of the employer at that time). Because neither party has raised this argument and because we conclude that Giguere satisfies the more demanding burden of showing that both he and Colvin were in the course of their employment at the time of the accident, we need not undertake this analysis.

[4] We note that Mrs. Colvin's receipt of workers' compensation benefits is consistent with our holding that Colvin was in the course of his employment at the time of the accident. As we explained in *Stamper v. Johnson*, "[b]y definition, if an employee [or his family] is collecting workers' compensation benefits under the Act, his injury occurred within the course of his employment because that is a prerequisite to the receipt of benefits." 2010 UT 26, ¶ 16, 232 P.3d 514.

evidence of the scope of a worker's employment. *See, e.g., Averett v. Grange*, 909 P.2d 246, 250 (Utah 1995) ("In workers' compensation cases, the most important factor in determining whether an employer-employee relationship exists is not what relationship the parties intended to create, but what relationship was *in fact* created.").

¶ 19   In *Utah Home Fire Insurance Co. v. Manning*, we were asked to determine whether an employment contract that defined a worker as an independent contractor was controlling for workers' compensation purposes. 1999 UT 77, 985 P.2d 243. Manning, a temporary employee of a general contractor, was injured on the job. *Id.* ¶ 3. After receiving workers' compensation, Manning brought a negligence suit against an alleged independent contractor, Green, who had also worked for the general contractor. *Id.* ¶¶ 2–4. Manning argued that the negligence action was not barred because Green, as an independent contractor, did not have immunity from suit under the WCA's exclusive remedy provision. *Id.* ¶¶ 5–6. We disagreed, explaining that when determining a worker's status, we consider not only "whatever agreements exist" between the worker and the employer, but also "the actual dealings between the parties." *Id.* ¶ 11. Thus, despite a contract provision defining Green as an independent contractor, the actual dealings between Green and the general contractor manifested the existence of an employer-employee relationship. *Id.* ¶ 15. And because Green and Manning were both employees of the general contractor, Manning's negligence suit against Green was barred by the exclusive remedy provision. *Id.* ¶¶ 18, 25. *Manning* thus makes clear that, although an employment contract may provide relevant information regarding an employee's duties and the parameters of the employment relationship, it cannot override the actual facts and circumstances that determine the existence of that relationship.

¶ 20   In this case, the relevant contract provision states that Giguere would not be paid for time spent traveling home from an out-of-town job site. But the fact that Advanced had no contractual duty to pay Giguere during his return trip is not dispositive of whether Giguere was within the course of his employment during such unpaid travel. Although pay for travel time "is one of the most reliable ways of making a case for the compensability of a going or coming trip, . . . the fact that the employee is *not* paid for travel time does not mean that the trip was *not* in the course of employment." 1 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW § 14.06[3] (2012).

¶ 21   Instead of relying solely on evidence of pay to determine whether travel time is within the scope of a worker's employment, we look to other, more persuasive factors, such as whether the employer benefitted from the trip and the extent to which the trip was controlled by the employer. *See Jex v. Utah Labor Comm'n*, 2013 UT 40, ¶ 19, 306 P.3d 799.[5]  And while receiving pay for travel time provides strong evidence that an employee's trip was under the control and for the benefit of the employer, the lack of pay for such travel does not necessarily suggest that the employer neither benefitted from nor controlled the travel.  And the fact that an employment contract, like the one in this case, explicitly contemplates extended travel tends to support the conclusion that such travel *is* for the benefit of the employer and is therefore within the scope of the worker's employment. *See Madden v. Mountain W. Fabricators*, 977 P.2d 861, 864 (Colo. 1999) (en banc) (including "whether the travel was contemplated by the employment contract" as a factor in determining whether such travel fits within an exception to the going-and-coming rule).

¶ 22   We therefore hold that the provision of Giguere's employment contract denying pay for the time spent returning from an out-of-town job site is not dispositive of whether the accident that killed Colvin occurred in the course of Giguere's employment.[6]  Instead, we look to the circumstances surrounding the return trip and conclude that it was within the scope of both Colvin's and Giguere's

---

[5] In *Jex v. Utah Labor Commission*, we analyzed the instrumentality exception to the going-and-coming rule. 2013 UT 40, ¶ 19, 306 P.3d 799.  Giguere has not argued for the application of this exception, and neither party has briefed it.  Therefore, while we do not rely on *Jex* in this case, we acknowledge that the two key factors of the instrumentality exception—benefit and control—are also relevant to other exceptions to the going-and-coming rule.

[6] The Colvins also rely on the fact that Giguere answered "no" to the question of whether he was in the course of his employment at the time of the accident on his application for benefits with Auto-Owners.  But "in the course of employment" is a statutory term of art, and we cannot impose on all employees the burden of understanding the legal meaning of such a term.  Like information found in a contract provision, information found in an application for benefits is less relevant to determining the scope of an employee's employment than the actual facts and circumstances surrounding an accident.

employment because it constituted a special errand for their employer.

## II. COLVIN AND GIGUERE WERE ON A SPECIAL ERRAND FOR THEIR EMPLOYER AND WERE THEREFORE IN THE COURSE OF THEIR EMPLOYMENT AT THE TIME OF THE ACCIDENT

¶ 23  In *State Tax Commission v. Industrial Commission of Utah*, we described a special errand as "'[a]n act outside an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby furthered.'" 685 P.2d 1051, 1054 (Utah 1984) (quoting 1A ARTHUR LARSON, LARSON'S WORKMEN'S COMPENSATION LAW, § 27.00 (1982)).  We held in *State Tax Commission* that an employee who was driving to a job-related training program was on a special errand for her employer and was thus in the course of her employment when she was involved in an automobile accident during that drive.  *Id.* at 1054–55.  We found it relevant to the special errand determination that, despite not receiving pay for her travel time, the employee had participated in the training "with the knowledge and permission" of her employer, her employer "would have benefitted from her training," and the winter drive to and from the training was "hazardous" and "extraordinary rather than normally incident to the employment." *Id.*

¶ 24  In *Drake v. Industrial Commission of Utah*, we articulated three factors to be considered when determining whether a journey constitutes a special errand:  (1) "the relative regularity or unusualness of the particular journey," (2) "the relative burden or onerousness of the journey on the employee" in comparison to "the extent of the task to be performed at the end of the journey," and (3) "the suddenness of the assignment from the employer."  939 P.2d 177, 183–84 (Utah 1997) (internal quotation marks omitted).

¶ 25  Applying these factors to this case, it is clear that Colvin and Giguere were on a special errand for Advanced at the time of the accident.  First, although Colvin and Giguere had traveled to the East Coast to complete projects that were part of their regular duties (i.e., cabinetry work), the projects were unusual in that Advanced worked mainly in Utah and Idaho, and the East Coast projects required travel of a longer distance than any prior Advanced project.

¶ 26  Second, when considering the onerousness of the journey, we take into account "not only the length of the journey, but also any other circumstances under which it is made, e.g., conditions of

travel, time of day, or day of week." *Id.* at 184. Extended overtime work prior beginning a trip is also relevant to the onerousness inquiry. *See* 1 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW § 14.05[4] (2012) (explaining that the special errand exception may apply where "the overtime work extended so far into the night as to transform the journey home into a substantially more inconvenient or hazardous trip"); *Falls v. Union Drilling Inc.*, 672 S.E.2d 204, 213 (W. Va. 2008) (collecting cases that have invoked the special errand exception where "the trip was made dangerous due to the fact that overtime or irregular hours were required to be worked").

¶ 27 In this case, the journey back to Utah was onerous not only because of its distance, but also because of the time of day (the journey began at approximately 5:00 a.m. on October 11 and continued until 4:26 a.m. on October 12, when the accident occurred) and the pace of the trip (Colvin had requested that he and Giguere drive straight through to Utah without stopping to rest). Furthermore, Colvin and Giguere had worked an approximately sixteen-hour shift just prior to beginning the drive home. Such long work hours and the resulting fatigue undoubtedly "made the homeward trip more hazardous." LARSON, *supra*, § 14.05[4].

¶ 28 Finally, the suddenness of the trip home is made evident by the fact that the day before Colvin and Giguere began the return trip, Colvin expressed his need to return quickly to the Spanish Fork project. It was at that point that Colvin instructed Giguere that they would begin the drive home immediately upon completing the Maryland project and that they would not stop to rest along the way. Therefore, although the return journey was foreseeable in that Colvin and Giguere knew that it would take place upon finishing the Maryland project, the decision regarding its specific timing and pace was made hastily.

¶ 29 In addition to satisfying the three *Drake* factors, the circumstances surrounding Colvin and Giguere's drive to Utah also meet the *State Tax Commission* definition of special errand in that the return trip advanced the interests of Colvin and Giguere's employer. 685 P.2d at 1054. First, the return trip benefitted Advanced because Colvin and Giguere were transporting Advanced assets—the company van and Advanced-owned tools—to Utah from the East Coast. *See Haynes Guardian Sec. Bureau v. Jordan*, 520 P.2d 1050, 1051 (Colo. App. 1974) (explaining that "the responsibility for custody of [an] employer's supplies and equipment and for transporting these items . . . provide[s] a substantial service for [the] employer from

which the employer clearly derive[s] benefit"). Moreover, the decision to depart immediately upon finishing the Maryland project and to drive straight through to Utah was made to promote Advanced's interest in having Colvin return to Utah to complete the Spanish Fork project as quickly as possible.

¶ 30 The Colvins argue that although Advanced may have benefitted from Colvin's return trip, Giguere's involvement in the trip did not contribute to the benefit because Giguere was merely catching a ride home. Thus it was Giguere, not Advanced, who benefitted from Giguere driving home with Colvin. But "[f]inding a benefit to the employee in the trip . . . should not be decisive against compensability, if the elements of the special errand rule are satisfied." LARSON, *supra*, § 14.05[5]. Here, the elements of a special errand have been met. Furthermore, although Giguere personally benefitted from driving home with Colvin, Colvin and Advanced also expected to receive a benefit from Giguere's assistance. Indeed, by sharing in the task of driving back to Utah, Giguere was advancing Colvin and Advanced's interest in completing the Spanish Fork project as soon as possible. And "it would be contrary not only to human nature but to the employer's best interests" to claim that an employee is not within the WCA's coverage where he "undertake[s] in good faith . . . to assist a co-employee in the latter's performance of his work." *Id.* § 27.01[1],[2].

¶ 31 Because Advanced benefitted from both Colvin's and Giguere's participation in the trip to Utah, and because the trip was unusual, onerous, and sudden, it satisfies the requirements of the special errand exception to the going-and-coming rule. Where the inferences drawn from the undisputed facts so strongly support a finding that Colvin and Giguere were on a special errand, we conclude that reasonable minds could not differ on this issue. Summary judgment was therefore appropriate. We thus conclude that the district court correctly held that the accident occurred in the course of both Colvin's and Giguere's employment and the exclusive remedy provision of the WCA bars this suit.

## CONCLUSION

¶ 32 We affirm the district court's dismissal of this suit under the WCA's exclusive remedy provision. Although an employment contract may be relevant in defining the parameters of the employer-employee relationship, it is not determinative of whether a particular task arises out of or is performed in the course of a worker's employment for purposes of determining the existence of coverage

under the WCA. The mere fact that Giguere's employment contract denied him pay for return travel time does not determine whether he was in the course of his employment while he was driving home from Maryland. Instead, the actual facts and circumstances surrounding Colvin and Giguere's return trip demonstrate that the two employees were on a special errand for their employer. We accordingly hold that they were in the course of their employment when the accident occurred and that this action is barred under the WCA's exclusive remedy provision.