2006 UT 70

**David J. ALLEN, an individual, Plaintiff and Petitioner,**

v.

**Thomas K. HALL, an individual; and Homecomings Financial Network, Inc., a Delaware corporation, Defendants and Respondents.**

**Chad R. Moore, an individual; and Melanie S. Moore, an individual, Intervenors.**

No. 20050338.

Supreme Court of Utah.

Nov. 17, 2006.

James G. Swensen, Salt Lake City, for petitioner.

Thomas K. Hall, Draper, pro se.

Bruce J. Nelson, Salt Lake City, for Homecomings.

Ronald G. Russell, Matthew J. Ball, Salt Lake City, for intervenors.

NEHRING, Justice:

¶ 1 Sarah Satterfield acquired the marital home in her divorce from David Allen, but with strings attached. If, for example, Ms. Satterfield moved more than fifty miles from

Salt Lake City before the parties' youngest child reached 18 years of age, the fee interest in the home would revert to Mr. Allen, who would be required to sell the home and divide the equity equally with Ms. Satterfield.

¶ 2 Ms. Satterfield moved to North Carolina when her youngest child was 14 years old. Before moving from Utah, Ms. Satterfield refinanced the home several times and conveyed her interest in it to Thomas Hall who made improvements to the home. Other conveyances and related debts secured by the property followed. Mr. Allen sued to reclaim his interest in the home. The trial court denied Mr. Allen's claim. On appeal, the court of appeals quieted title in Mr. Allen but required him to assume the debt secured by the property after he conveyed the home to Ms. Satterfield and to pay Mr. Hall for improvements under the provisions of Utah's Occupying Claimants Act, Utah Code Ann. §§ 57–6–1 to –8.

¶ 3 We affirm the court of appeals' award of title to Mr. Allen but reverse the court's determination that Mr. Hall is entitled to protection under the Occupying Claimants Act and remand for further proceedings on the merits of Mr. Allen's claim of unjust enrichment.

## BACKGROUND

¶ 4 Mr. Allen and Ms. Satterfield were divorced in 1990. The divorce decree awarded Ms. Satterfield the marital home. Ms. Satterfield's continued ownership of the home was contingent upon making timely payments on the home's mortgage and maintaining her residence within fifty miles of Salt Lake City, Utah, until after their youngest child turned eighteen. According to the terms of the divorce decree, should Ms. Satterfield fail to comply with either of these conditions, the fee interest in the property would revert to Mr. Allen, who would then "be responsible for all indebtedness thereon" and who would be obligated to sell the property and equally divide any equity realized from the sale with Ms. Satterfield.

¶ 5 All of the provisions of the divorce decree bearing on this controversy are located in paragraph 10 of the Allen/Satterfield divorce decree, which states:

[Allen] is purchasing the house and lot located at 10159 Flanders Road, Sandy, Utah which shall be awarded to [Satterfield] as her sole and separate property subject to no claim by [Allen] except as set forth in this paragraph. [Satterfield] shall be responsible for all indebtedness and expenses therefrom, holding [Allen] harmless therefrom. [Allen] shall provide [Satterfield] with a quit-claim deed within 30 days of the divorce becoming final, with said quit-claim deed to contain the provisions that it is contingent upon [Satterfield] maintaining durrent [sic] house payments and not moving from the Salt Lake City area before the [parties'] last child reaches age 18.... If [Satterfield] shall move more than 50 miles from Salt Lake City Utah before the last child reaches age 18, ownership of the marital residence shall revert to [Allen], who will then sell the home and divide the proceeds equally with [Satterfield], and who will be responsible for all indebtedness thereon until the house is sold. These provisions are to ensure that the children have a suitable residence during their minority, and are structured to provide a benefit to [Satterfield] if she shall continue to reside in Salt Lake City, Utah in the form of all of the equity in said home, and a detriment if she shall move, in the form of the loss of one-half of the equity.

¶ 6 Mr. Allen transferred the property to Ms. Satterfield by quit-claim deed in 1993. The deed contains the following language of reservation:

This Quit–Claim Deed is subject to the rights and reservations included in that certain Decree of Divorce entered by the Third Judicial District Court, Salt Lake County, State of Utah in the case of *David John Allen v. Sarah Satterfield Allen,* Civil No. 894903635 (dated May 17, 1990). Said Decree of Divorce provides, in part, that if the grantee fails to maintain current house payments or if the grantee shall move more than 50 miles from Salt Lake City, Utah, before the grantor and grantee's last child reaches 18 year [sic] of age,

title and ownership of the above described property shall revert to the grantor.

¶ 7 Ms. Satterfield and her children took possession of the property and, between 1990 and 1998, refinanced it several times. Mr. Allen was aware of some of the refinancing and even assisted Ms. Satterfield in refinancing the home on at least one occasion. Mr. Allen never received any proceeds from Ms. Satterfield's refinancing.

¶ 8 In January 1998, Ms. Satterfield conveyed the property by quit-claim deed to Mr. Hall. Mr. Hall paid Ms. Satterfield $7,000 cash and assumed the existing first and second mortgages totaling approximately $139,000. In June 1999, Mr. Hall retired the existing mortgages when he refinanced the property with Homecomings Financial Network, Inc., in the amount of $151,900.

¶ 9 Although Ms. Satterfield moved from the home after selling it to Mr. Hall, she maintained her residence within fifty miles of Salt Lake City. In July 1999, Mr. Allen's reversionary interest was awakened when Ms. Satterfield moved away from Utah. Shortly thereafter, Mr. Allen contacted Mr. Hall and claimed ownership of the property. Mr. Hall refused to recognize Mr. Allen's claim, and in 2000, Mr. Allen brought this quiet title action against Mr. Hall. Mr. Hall counterclaimed, seeking to quiet his own title and for damages including, in the event the court eventually sided with Mr. Allen, reimbursement for improvements he had made to the property.

¶ 10 The trial court quieted title to the property in Mr. Hall. The trial court also found that were Mr. Allen to be awarded title to the property, he would take the property subject to all existing debt including the Homecomings mortgage, and that Mr. Hall would be entitled to reimbursement of $52,279.36 for improvements to the home and $6,974.67 in property taxes paid by Mr. Hall. Mr. Allen appealed.

¶ 11 Meanwhile, Mr. Hall transferred the property to Homecomings by deed in lieu of foreclosure and, in 2004, Mr. Chad Moore and Mrs. Melanie Moore purchased the property from Homecomings.

¶ 12 On appeal, the court of appeals affirmed in part and reversed in part. The court of appeals reversed the trial court's ruling quieting title in Mr. Hall. It determined that Mr. Allen was entitled to the property—subject to the debt encumbering the property and reimbursement to Mr. Hall under the Utah Occupying Claimants Act for the value of Mr. Hall's improvements to the property. We granted certiorari to answer three questions: (1) whether Mr. Hall, who held title to property subject to Mr. Allen's reversionary interest, is entitled to compensation for improvements under the Occupying Claimants Act and, if so, whether the court of appeals properly determined the value of the improvements; (2) whether Mr. Allen was required to assume all mortgage debt on the property and not just the mortgage that was in place when he deeded the property to Ms. Satterfield; and (3) whether the court of appeals failed to consider Mr. Allen's own claims for unjust enrichment, based upon Mr. Hall's use of the property after ownership of the home reverted to Mr. Allen.

## ANALYSIS

I. THE PROPERTY INTEREST CREATED BY THE DECREE OF DIVORCE WAS A FEE SIMPLE DETERMINABLE

■ ¶ 13 Both Mr. Hall's right to recover for the value of the improvements he made to the Allen/Satterfield home and the right of creditors whose interests are secured by the home depend on the nature of the property interest described in paragraph 10 of the divorce decree. For reasons that we will explain, the interest conveyed first to Ms. Satterfield then to Mr. Hall on to Homecomings and finally to the Moores was a fee simple determinable.

■ ¶ 14 "If a fee estate can be determined or defeated by an event which is not certain to occur, it is a defeasible fee simple.... A defeasible fee gives the complete set of rights of ownership to the grantee until the defeating event arises." James H. Backman, *Thomas and Backman on Utah Real Property Law* § 2.02(c), at 43 (1999) (Supp.2004). Defeasible fee interests, in

turn, fall into two categories: fee simple determinable and fee simple subject to a condition subsequent. The two classes of defeasible interests may be distinguished by the consequences that befall the holder of the defeasible interest if the event that makes the fee defeasible occurs.

¶ 15 In the case of the fee simple determinable, the defeasible fee will terminate automatically upon the occurrence of the condition. *Nelson v. Provo City,* 872 P.2d 35, 38 (Utah Ct.App.1994) (citing *Black's Law Dictionary* 615–16 (6th ed.1990)). By contrast, a fee simple subject to a condition subsequent is an estate that will be terminated only after the grantor re-enters the land or makes a claim to it following the occurrence of the condition. With the fee simple subject to a condition subsequent, the grantee holds the fee subject to the possibility of reverter and not the inevitability of reverter that marks the fee simple determinable.

¶ 16 Paragraph 10 of the divorce decree states that, in the event Ms. Satterfield moves more than fifty miles from Salt Lake City before the youngest child of the parties turns eighteen years of age, "ownership of the marital residence shall revert to [Mr. Allen]." This is unambiguous language creating a fee simple determinable. This language was repeated in the quit-claim deed through which Mr. Allen conveyed the property to Ms. Satterfield. The deed states that

if the grantee [Satterfield] fails to maintain current house payments or if the grantee shall move more than 50 miles from Salt Lake City, Utah, before the grantor and grantee's last child reaches 18 year [sic] of age, title and ownership of the above described property shall revert to the grantor [Allen].

Accordingly, we conclude that Mr. Allen conveyed a fee simple determinable to Ms. Satterfield.

## II. AN OWNER WHO HOLDS IN FEE SIMPLE DETERMINABLE IS NOT ENTITLED TO COMPENSATION FOR HIS IMPROVEMENTS UNDER THE UTAH OCCUPYING CLAIMANTS ACT

¶ 17 The Utah Occupying Claimants Act, Utah Code Ann. §§ 57–6–1 to –8, pro-

vides relief to a party who innocently, but wrongfully, occupies real property under "color of title." Our state has extended such relief to occupants of land by statute since statehood. We summarized the policy objectives of the Act in our observation that

such statutes ameliorate the strict common law rule that the record owner is entitled to the improvements placed by another upon his property and are based upon the equitable doctrine of unjust enrichment, which entitles the bona fide claimant, who acted while in possession under color of title, to recover the value of his improvements to the extent that they unjustly enrich the record owner by enhancing the value of his land.

*Reimann v. Baum,* 115 Utah 147, 157–58, 203 P.2d 387 (1949).

¶ 18 In this case, Mr. Hall's eligibility for relief under the Act turns on whether he had "color of title" in the Allen/Satterfield residence. The Act defines "color of title" in section 57–6–4, stating:

Any person has color of title who has occupied a tract of real estate by himself, or by those under whom he claims, for the term of five years, or who has occupied it for less time, if he, or those under whom he claims, have at any time during the occupancy with the knowledge or consent, express or implied, of the real owner made any valuable improvements on the real estate, or if he or those under whom he claims have at any time during the occupancy paid the ordinary county taxes on the real estate for any one year, and two years have elapsed without a repayment by the owner, and the occupancy is continued up to the time at which the action is brought by which the recovery of the real estate is obtained.

Utah Code Ann. § 57–6–4 (2000 & Supp. 2006).

¶ 19 A closer look at this provision discloses why Mr. Hall does not satisfy its requirements. Section 57–6–4 creates a definition of "color of title" that is a more

restrictive definition than the general understanding of the term. Under its common meaning, "color of title" could be held by a party who does not occupy the property. Under the Act, one must occupy land to claim "color of title." Of course, Mr. Hall occupied the home and therefore met this requirement. However, Mr. Hall is disqualified from recovery under the Act because his occupation of the home was under a title that was too good to qualify as "color of title."

¶ 20 The Act's definition of "color of title" shares with its general meaning the core feature of title imperfection. A holder by "color of title" has a claim to title that while having the appearance of validity is in reality defective. *See Black's Law Dictionary* 266 (6th ed.1990). This element of "color of title" appears in section 57–6–4 when the text distinguishes the occupying claimant from the "real owner."

¶ 21 Mr. Hall was the "real owner" of the Allen/Satterfield home when he made the improvements to it. There was no defect in his title. He was the lawful owner of a fee simple determinable. When he made the improvements to the property, there was no guarantee that the value of the improvements would be enjoyed by Mr. Allen. Indeed, there was little Mr. Allen could do about Mr. Hall's decisions concerning the property. As the fee holder, Mr. Hall was free to deal with the property as he saw fit. Under these circumstances, the considerations of fairness and equity that form the policy rationale for the Act are not present.

¶ 22 The Act cannot reasonably coexist with fee simple determinable estates. The grantor of a fee simple determinable has the expectation that the estate which may revert to him will be of the same quality as the estate he conveyed. *See* Restatement (First) of Property § 44 (1936). This expectation would be frustrated were the grantor to be exposed to liability for the costs of improvements over which he had no control.

There is nothing in the Act to suggest that the legislature intended that it supplant the core principles of fee simple determinable estates, and we decline to bring them within the reach of the Act. We therefore reverse the court of appeals' determination that Mr. Hall was entitled to recovery under the Act.[1]

## III.  MR. ALLEN IS ENTITLED TO HOLD TITLE FREE OF THE REMAINING INDEBTEDNESS

¶ 23 Based on its interpretation of the terms of the decree of divorce, the court of appeals held that Mr. Allen was liable for indebtedness, secured by the property, that was acquired after he conveyed the home to Ms. Satterfield. The court of appeals agreed with the trial court that Mr. Allen's consent to "be responsible for all indebtedness thereon until the house is sold" meant that he would be liable for debt acquired before the property reverted to him by reason of Ms. Satterfield's relocation. This interpretation fails to account for the effect of the reversion on that indebtedness.

¶ 24 The estate that reverted to Mr. Allen was the same estate that he held at the time he conveyed the fee simple determinable interest to Ms. Satterfield. That estate was one unencumbered by any indebtedness acquired after the conveyance. The language relied on by the court of appeals to justify Mr. Allen's liability for the indebtedness acquired by others addresses only three forms of debt: the indebtedness that was in place when he conveyed the property to Ms. Satterfield (it had been long since paid off), indebtedness incurred by Mr. Allen after title reverted to him, and indebtedness that he expressly consented to assume. No indebtedness fell into any of these categories. It is the nature of the fee simple determinable property interest created by the terms of the decree of divorce that defines the scope of Mr. Allen's post-reversion debt obligations. Upon the reversion of the property to Mr. Allen, no indebtedness was owed on it, and

---

1.  While we reverse the court of appeals' decision on this issue, we note that the court of appeals did not fully analyze the applicability of the Act to Mr. Hall's property interest because Mr. Allen conceded that Mr. Hall held the property under "color of title." We have exercised our discretion upon certiorari review to consider whether the Act may be extended to fee simple determinable interests irrespective of this concession.

thus no debt existed for which Mr. Allen was responsible. We therefore hold that Mr. Allen's title is unencumbered by post-conveyance indebtedness.

IV. WE REMAND TO THE TRIAL COURT FOR CONSIDERATION OF MR. ALLEN'S UNJUST ENRICHMENT CLAIM AGAINST MR. HALL

¶ 25 The trial court quieted title in Mr. Hall and, therefore, had no cause to consider Mr. Allen's unjust enrichment claim. The court of appeals reversed the trial court, and we affirm, thus quieting title in Mr. Allen. We now must remand for consideration of Mr. Allen's unjust enrichment claims as we lack the evidence to rule on this issue.

¶ 26 Both parties point to a three-element test for unjust enrichment, which is taken from *Desert Miriah, Inc. v. B & L Auto, Inc.*, 2000 UT 83, ¶ 13, 12 P.3d 580. First, there must be a benefit conferred by one person on another. Second, the conferee must appreciate or have knowledge of the benefit. Third, there must be acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value. These are factual elements and have not been briefed by the parties and as such cannot be determined by this court.

> The facts underlying unjust enrichment claims vary greatly from case to case, and the doctrine of unjust enrichment was specifically developed to address situations that did not fit within a particular legal standard but which nonetheless merited judicial intervention. An appellate court's ability to clearly articulate outcome-determinative factors in unjust enrichment cases "remains elusive," and thus favors granting the trial court broad discretion.

*Id.* ¶ 12.

## CONCLUSION

¶ 27 We quiet title to this property in Mr. Allen. As Ms. Satterfield passed no security interest down the chain of title which survived the determining event and Mr. Hall lacked the power to create any interest binding against Mr. Allen, the property returns to Mr. Allen in fee simple absolute and clear of any debt held by the parties to this action. We are obliged to call attention to the fact that we have not considered the effect of the term of the divorce decree which calls for the sale of and division of the equity obtained from the property. Finally, as the trial court had no reason to consider Mr. Allen's unjust enrichment claim at trial, it is appropriate to remand the case to the trial court for disposition consistent with this opinion.

¶ 28 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Judge SHUMATE concur in Justice NEHRING's opinion.

¶ 29 Having disqualified herself, Justice PARRISH does not participate herein; District Judge JAMES L. SHUMATE sat.