2007 UT 32

**WASATCH CREST INSURANCE CO., in Liquidation; Wasatch Crest Mutual Insurance Co., in Liquidation; and D. Kent Michie, Liquidator, Plaintiffs and Appellants,**

v.

**LWP CLAIMS ADMINISTRATORS CORP., a California corporation; and LWP Claims Solutions, Inc., a California corporation, Defendants and Appellees.**

No. 20051102.

Supreme Court of Utah.

April 6, 2007.

John P. Harrington, Cecilia M. Romero, J. Ray Barrios, Jr., Salt Lake City, for plaintiffs.

Edwin C. Barnes, Charles R. Brown, Jennifer A. James, Salt Lake City, for defendants.

WILKINS, Associate Chief Justice:

¶ 1 On direct appeal from the district court's grant of summary judgment, the Utah Insurance Commissioner, as court-appointed liquidator (the "Liquidator"), seeks to recover, on behalf of two liquidating insurance companies, payments made by the companies to a former affiliate. Utah Code section 31A–27–322 allows a liquidator to recover "from any affiliate that controlled [a liquidating] insurer the amount of distributions ... made at any time during the five

years preceding the petition for liquidation." We agree with the district court that the affiliate in this case was not one that "controlled" the insurance companies within the meaning of the statute and that the payments did not constitute "distributions." We therefore affirm the district court's grant of summary judgment.

## BACKGROUND

¶ 2 In 1999, Wasatch Crest Group, Inc. ("Group"), an insurance holding company, purchased LWP Commercial Claims Administrators, Inc. ("LWP"),[1] an insurance claims handling company, from John and Erica Igoe. Shortly after the purchase, John Igoe became president and chief operating officer of Group and of Wasatch Crest Insurance Co. ("Insurance"), a wholly-owned subsidiary of Group, while serving concurrently as chairman of the board and chief executive officer of LWP. Several other individuals also held overlapping management positions within the three companies, though there was never complete identity of board membership.

¶ 3 From about the time of the purchase until 2002, LWP provided claims-handling services for Insurance as well as for Wasatch Crest Mutual Insurance Co. ("Mutual"), an insurance company that at one point had owned stock in Group. In 2002, Group sold LWP for fair market value to John Igoe and Judy Adlam, who at the same time resigned from their positions with Group and Insurance. In 2003, Insurance and Mutual were placed into liquidation.

¶ 4 The Liquidator filed a claim in district court to recoup, on behalf of Insurance and Mutual, payments made by the companies to LWP for the claims-handling services it provided. The Liquidator relied on Utah Code section 31A–27–322(1), which states that a

liquidator "has a right to recover on behalf of [a liquidating] insurer from any affiliate that controlled the insurer the amount of distributions ... made at any time during the five years preceding the petition for liquidation, ... subject to the limitations [outlined in the statute]."

¶ 5 In moving for summary judgment, the Liquidator argued that LWP was an "affiliate that controlled" Insurance and Mutual[2] and that the payments to LWP constituted "distributions" within the meaning of this statute. However, the district court denied the Liquidator's motion and granted LWP's cross-motion for summary judgment. The court held that although LWP was an affiliate of Insurance, it did not "control" either Insurance or Mutual as required by the statute. The court also held that the term "distribution" refers to dividends or other payments of equity, not to payments for services rendered, as were present here. Thus, the court determined as a matter of law that the Liquidator could not recover the payments because the statute was inapplicable. The Liquidator appealed.

## ANALYSIS

¶ 6 We review the district court's "interpretation and application of a statute" for correctness, "affording no deference to the district court's legal conclusion." *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998). We likewise review for correctness the district court's grant of summary judgment as a question of law. *Uintah Basin Med. Ctr. v. Hardy*, 2002 UT 92, ¶ 7, 54 P.3d 1165.

¶ 7 The Liquidator argues that Insurance and Mutual are entitled to recover the payments they made to LWP based on the Utah Insurance Code's provision for recoupment from affiliates. *See* Utah Code Ann. § 31A–

---

1. At the time of the purchase, Group created a new corporate entity, LWP Claims Administrators Corp. (later renamed LWP Claims Solutions, Inc.), which took possession and title to all the purchased assets. Because all these entities are essentially the same company, we refer to them collectively as "LWP."

2. LWP asserted before the district court that Mutual was no longer affiliated with Group or

any of its affiliates at any time during which LWP provided services to Mutual. In response, the Liquidator withdrew its motion for summary judgment with respect to Mutual but maintains that material issues of fact concerning control of Mutual remain in dispute and that summary judgment with respect to Mutual in favor of LWP was therefore improper.

27–322 (2005). The Liquidator disputes the district court's conclusion that the statute does not apply based on its findings that LWP was not an "affiliate that controlled" the companies and that the payments were not "distributions" within the meaning of the statute. Because the court granted summary judgment to LWP on these two independently sufficient bases, we review each in turn.

¶ 8 The Liquidator first argues that LWP qualifies as an "affiliate that controlled" Insurance within the meaning of Utah Code section 31A–27–322. When interpreting a statute, we begin with the statute's plain language. *J. Pochynok Co. v. Smedsrud,* 2005 UT 39, ¶ 15, 116 P.3d 353. The statute states,

> If an order for the liquidation ... of an insurer authorized to do business in this state is ordered under this chapter, the receiver appointed under the order has a right to recover on behalf of the insurer from any *affiliate that controlled* the insurer the amount of distributions ... made at any time during the five years preceding the petition for liquidation ....

Utah Code Ann. § 31A–27–322(1) (2005) (emphasis added). To recover from LWP under the plain language of this statute, therefore, the Liquidator must show that LWP was an "affiliate that controlled" Insurance. Although LWP concedes that it was an affiliate of Insurance, the statute requires more for recoupment; it requires that LWP "controlled" Insurance.

¶ 9 The Liquidator argues that affiliate status presumes control, but the plain language of the statute supports no such assertion. When interpreting statutes, we "presume that the legislature used each term advisedly," and we consequently "avoid interpretations that will render portions of a statute superfluous or inoperative." *State v. Tooele County,* 2002 UT 8, ¶ 10, 44 P.3d 680 (internal quotation marks omitted). The statute explicitly qualifies the term "affiliate" with the modifier "that controlled." Because the Liquidator's suggested reading would render the phrase "that controlled" superfluous, we avoid that interpretation.

¶ 10 In addition, the Code's definition of "affiliate" refutes the Liquidator's contention that LWP's concession of affiliate status implies that it controlled Insurance. The Code defines "affiliate" in terms of three categories of control: " 'Affiliate' means any person who controls, is controlled by, or is under common control with, another person." Utah Code Ann. § 31A–1–301(5) (2005). Only the first of these three categories falls into the ambit of section 31A–27–322, which states that a liquidator may recover from "any affiliate *that controlled* the insurer." By its terms, the statute does not apply to either of the other two categories of affiliates.

¶ 11 During the time LWP performed services for Insurance, both companies were wholly-owned subsidiaries of Group. Although they shared some common management and were therefore arguably under common control, at no point did one company own or control any portion of the other. John Igoe, for example, could not, by virtue of his role as a director of LWP, instruct Insurance to make payments to LWP. The fact that he may have done so in his role as a director of Insurance bears no significance on whether LWP controlled Insurance. Because no aspect of Igoe's or others' positions as directors of LWP endowed them with the power to direct any action by Insurance, LWP could not have controlled Insurance within the meaning of the statute.

¶ 12 The Liquidator also disputes the district court's finding that the payments Insurance made to LWP for claims-handling services were not "distributions" within the meaning of the statute. Utah Code section 31A–27–322 allows a liquidator to recoup only "distributions" made by the insurer during the five years prior to the petition for liquidation. Although the Liquidator argues that the term "distributions" refers to payments of any kind, the court determined that the term "distributions" refers only to dividends or other transfers of equity, not to payments for services. We agree with the district court.

¶ 13 Although the Utah Insurance Code does not define the term "distribution," the term is defined elsewhere in the Utah Code as a portion of equity. For instance, the

Utah Revised Nonprofit Corporation Act defines "distribution" as "the payment of a dividend or any part of the income or profit of a ... corporation." Utah Code Ann. § 16–6a–102(17)(a) (2005). In fact, that statute explicitly excludes the interpretation the Liquidator urges. It states, " 'Distribution' does not include fair-value payments for ... services received." *Id.* § 16–6a–102(17)(b). Likewise, as the district court noted, the Utah Revised Business Corporation Act defines "distribution" as a transfer of equity. *See id.* § 16–10a–102(13).

¶ 14 This definition comports with both the common usage of the term and its treatment in the Insurance Code. "Distribution" commonly refers to "[t]he act of apportioning or giving out ... such as [in] a dividend payment out of current or past earnings," [3] which suggests no relation to payments for services. The Insurance Code highlights this point by using contrasting descriptions of payments in other sections. For instance, sections 31A–27–320 and –321 allow for the recovery of "preferences" and fraudulent "transfers" made within certain time periods. Use of the terms "transfers" and "preferences" indicates that the legislature intended a different meaning when it chose the term "distribution" in section 31A–27–322. The term does not refer to transfers generally, but embraces only dividends and other transfers of equity. We find no provision in the Utah Code in which "distributions" encompasses fees earned for services rendered.

¶ 15 As payments for services, the payments made to LWP were not "distributions" within the meaning of section 31A–27–322 and are not subject to recovery under that section. The Liquidator does not contend that the payments to LWP were excessive, fraudulent, or improperly obtained. Nor does the Liquidator suggest that the payments were, in reality, transfers of equity disguised as payments for services. Therefore, the payments are not recoverable as a matter of law.

## CONCLUSION

¶ 16 The Liquidator may not, under Utah Code section 31A–27–322, recover on behalf

of Insurance or Mutual payments made to LWP for the claims-handling services LWP performed. Although section 31A–27–322 allows a liquidator to recover "distributions" made to "affiliates that controlled" a liquidating insurer, LWP was not an affiliate that controlled Insurance or Mutual, and the payments were fees for services rendered, not distributions within the meaning of the statute. The statute therefore does not apply to these corporations or to these payments. Affirmed.

¶ 17 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.

**3.** *Black's Law Dictionary* 488 (7th ed.1999).