2010 UT App 227

**ESTATE OF Edwin HIGLEY, Plaintiff and Appellant,**

v.

**STATE of Utah, DEPARTMENT OF TRANSPORTATION, Defendant and Appellee.**

**No. 20090345–CA.**

Court of Appeals of Utah.

Aug. 19, 2010.

M. Darin Hammond, Ogden, for Appellant.

Mark L. Shurtleff, Nancy L. Kemp, and Gary D. Josephson, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and ROTH.

## AMENDED OPINION [1]

DAVIS, Presiding Judge:

¶ 1 The Estate of Edwin Higley (the Estate) appeals from a judgment dismissing its action against the State of Utah, Department of Transportation (UDOT) to quiet title in certain real property and for equitable relief. We affirm.

## BACKGROUND

¶ 2 In 1974, the district court entered a condemnation judgment in favor of UDOT, condemning land belonging to Edwin Higley (Higley) for the construction of a highway. Although most of the property condemned was in Davis county, one tract of land included property in both Weber and Davis Counties. UDOT promptly filed the condemnation judgment with the Davis County Recorder's Office but failed to file the judgment with the Weber County Recorder's Office.

¶ 3 Nearly thirty years later, in the fall of 2002 and several months after Higley passed away, UDOT learned of construction activity on the condemned property and started investigating the matter. In the course of doing so, UDOT discovered that the condemnation judgment had not been filed with the Weber County Recorder's Office. UDOT then recorded the condemnation judgment in Weber County in January 2003.

¶ 4 In May 2006, the Estate filed an action seeking to quiet title in a specific parcel of land located in Weber County (the subject property), arguing that because UDOT had failed to file the condemnation judgment with the appropriate county recorder's office before eight years had lapsed, the January 2003 recording did not transfer title to the subject property to UDOT. The Estate additionally set forth facts suggesting that its quiet title claim was also based on adverse possession. The Estate eventually amended its complaint to add several equitable claims.[2] UDOT moved for judgment on the pleadings as to each of the Estate's claims, and the district court ultimately granted each motion. The district court then entered a final judgment dismissing the action, from which the Estate now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 The Estate first argues, based on its interpretation of multiple sections of the Utah Code, that the condemnation judgment "expired" in 1982 and that UDOT's subsequent recording in Weber County was ineffective to vest title in the subject property in UDOT. The district court interpreted the Utah Code sections differently and concluded that there was no limitation on when UDOT could record the condemnation judgment. "We review the district court's interpretation and application of a statute for correctness, affording no deference to the district court's legal conclusion." *Wasatch Crest Ins. Co. v. LWP Claims Adm'rs Corp.*, 2007 UT 32, ¶ 6, 158 P.3d 548 (internal quotation marks omitted).

¶ 6 The Estate next argues that it should have prevailed on its adverse possession claim. The district court, however, determined that pursuant to statutory law, an adverse possession claim could not be pursued against UDOT for the type of property at issue. Again, "[w]e review the district court's . . . application of a statute for cor-

---

1. This Amended Opinion replaces the Opinion in Case No. 20090345–CA issued on May 27, 2010.

2. Notwithstanding the fact that Higley was a party to the condemnation action and accepted payment for the condemned property, the Estate claims that Higley and his successors continued to pay taxes on the subject property through 2004. The Estate's equitable claims sought reimbursement for those payments.

rectness." *Id.* (internal quotation marks omitted).

¶ 7 Finally, the Estate asserts that the district court erred in granting judgment on the pleadings as to its equitable claims. "A reviewing court will 'affirm a judgment on the pleadings only if, as a matter of law, the nonmoving party . . . could not prevail under the facts alleged.' Therefore, this court 'give[s] such a ruling no deference and review[s] it for correctness.'" *MBNA Am. Bank, N.A. v. Williams,* 2006 UT App 432, ¶ 2, 147 P.3d 536 (alterations and omission in original) (quoting *Mountain Am. Credit Union v. McClellan,* 854 P.2d 590, 591 (Utah Ct.App.1993)).

## ANALYSIS

### I. Timely Recording of the Condemnation Judgment

¶ 8 The statute relating to recording of condemnation judgments in effect at both the time of the condemnation judgment's entry and the time of the judgment's eventual recording stated, "A copy of the judgment must be filed in the office of the recorder of the county, and thereupon the property described therein shall vest in the plaintiff for the purpose therein specified." Utah Code Ann. § 78-34-15 (1953 & 2002) (current version at Utah Code Ann. § 78B-6-516 (2008)).[3] Thus, it appears that the "vesting" addressed by this section could not have occurred for the subject property until the condemnation judgment was filed with the Weber County Recorder's Office. We do not, however, agree with the Estate that there exists some requirement that a recording of a condemnation judgment occur within eight years of its issuance. Certainly there is nothing in section 78-34-15 that would indicate any time limitation on the mandated recording. *See id.* And, as discussed in more detail below, we do not agree that the other Utah Code provisions cited by the Estate impose such a time requirement.

 ¶ 9 First, the Estate cites to Utah Code section 78B-2-311, which imposes an eight-year limitation on bringing an action based on a judgment of a court, *see* Utah Code Ann. § 78B-2-311 (2008). Although this section is found in the chapter setting forth various statutes of limitations, it is specifically located within the chapter's Part 3, which is entitled "Other Than Real Property." Thus, this section does not appear to be applicable to actions respecting real property. *See generally Jones v. Utah Bd. of Pardons & Parole,* 2004 UT 53, ¶ 44, 94 P.3d 283 (stating that a statute must be considered "in context with its surrounding sections"). Also, as we discuss in greater detail below, UDOT did not bring an "action."

 ¶ 10 Second, the Estate cites to Utah Code section 78B-2-201, *see* Utah Code Ann. § 78B-2-201 (2008), which *is* located within the relevant part of the chapter on statutes of limitations—Part 2, which is entitled "Real Property." This section provides,

> The state may not *bring an action against any person* for or with respect to any real property, its issues or profits, based upon the state's right or title to the real property, unless:
>
> (1) the right or title to the property accrued within seven years before any action or other proceeding is commenced; or
>
> (2) the state or those from whom it claims received all of a portion of the rents and profits from the real property within the immediately preceding seven years.

*Id.* (emphasis added). But we do not agree with the Estate that the phrase "bringing an action against any person" would include the clerical act of filing the condemnation judgment with the county recorder, regardless of the impact such a recording may have. Indeed, the term "action" is defined by statute to "include[ ] counterclaims and cross-complaints and all other civil actions in which affirmative relief is sought." *Id.* § 78B-2-101(1). There is simply nothing to indicate that the phrase "bring an action against any

---

**3.** Interestingly, the current version of this statute no longer has the "thereupon" language indicating a relationship between the required filing and the referenced vesting. *See* Utah Code Ann. § 78B-6-516 (2008). The revised version instead simply states, "A copy of the judgment shall be filed in the office of the county recorder and the property described in it shall vest in the plaintiff for the purpose specified." *Id.*

person" references clerical acts or other acts of an entirely non-litigious nature.[4]

¶ 11 Third, the Estate references one subsection of Utah Code section 78B–5–202, which subsection states, "Judgments shall continue for eight years from the date of entry in a court unless previously satisfied or unless enforcement of the judgment is stayed in accordance with law," *id.* § 78B–5–202(1). Although the language of that subsection does not specify the type of judgment to which it refers, the referenced statute comes from a chapter entitled "Procedure and Evidence" and all of the remaining subsections of the statute address money judgments as liens on real property, *see id.* § 78B–5–202(2)–(8). Thus, reading the term "judgment" to include judgments where the subject matter of the litigation is real property would make little sense in the context of this statute because that aspect of such a judgment would not have the effect of creating a lien upon another piece of real property. *See generally Lyon v. Burton*, 2000 UT 19, ¶ 17, 5 P.3d 616 ("The plain language of a statute is to be read as a whole, and its provisions interpreted in harmony with other provisions in the same statute and with other statutes under the same and related chapters." (internal quotation marks omitted)). We therefore conclude that this statute is also inapplicable to the case before us.

¶ 12 Finally, in addition to a complete lack of statutory support for the proposition that a judgment respecting real property "expires" after eight years, the Estate cites to no case law supporting such a proposition.[5] Moreover, application of the rule urged by the Estate would lead to absurd results. For example, under such logic, a person in whom the district court quieted title would be required to renew the judgment every eight years lest anyone, including the person who originally lost in the prior quiet title action, return and assert claims to the property. In sum, we are unconvinced that a judgment respecting real property "expires" after eight years or that a condemning entity that records a condemnation judgment after eight years cannot obtain title to the condemned property.

## II. Adverse Possession

¶ 13 The trial court determined that the Estate could not obtain title to the subject property through adverse possession because "statutory law does not allow a party to adversely posses[s] State owned land." The referenced statutory law provides that, generally, "[a] person may not acquire by adverse possession any right in or title to any property held by a town, city, or county and designated for public use." *See* Utah Code

---

4. Of course, it was the Estate that brought the instant action.

5. Indeed, we note that there is at least one case that allowed the recording of a condemnation judgment long after the judgment was entered. *See Salt Lake, Garfield & W. Ry. Co. v. Allied Materials Co.*, 4 Utah 2d 218, 291 P.2d 883, 883 (1955). In that case, the condemnation judgment was issued in 1897, but the judgment was not filed with the county recorder until 1952. *See id.* at 883–84. The trial court then, although not directly commenting on the issue, presumed that title vested upon recording as stated in section 78–34–15, notwithstanding the fifty-five-year lapse between the judgment and the filing. *See id.* at 884. The ultimate issue before the court then became the notice issue that had arisen due to the condemned property having been purchased by a third party sometime before the condemnation judgment was recorded. *See id.*

Similarly, had there been any bona fide purchaser for value in this case, the issue would have become whether that purchaser had notice of the condemning entity's interest. If the purchaser was without such notice, UDOT's late-recorded interest would ordinarily be subject to any recorded interest of the purchaser. *See* Utah Code Ann. § 57–3–103 (2000) ("Each document not recorded as provided in this title is void as against any subsequent purchaser of the same real property, or any portion of it, if: (1) the subsequent purchaser purchased the property in good faith and for a valuable consideration; and (2) the subsequent purchaser's document is first duly recorded."); *McGarry v. Thompson*, 114 Utah 442, 201 P.2d 288, 292 (1948) ("[A]n innocent purchaser for value without notice of a previous conveyance, who first records his conveyance, takes preference over a prior unrecorded conveyance."); *Horman v. Clark*, 744 P.2d 1014, 1016 (Utah Ct.App.1987) ("[T]he purpose of the recording statute is to protect the grantee's rights ..., and, if the grantee fails to record, he assumes the risk of a subsequent grantee of the same land acquiring superior rights to his by recordation." (internal quotation marks omitted)).

Ann. § 78B–2–216 (2008).[6] The Estate argues that this statutory provision is inapplicable here because it mentions only property held by subdivisions of the State and not property held by the State itself. Nonetheless, the Estate apparently recognizes the long-held general rule that adverse possession claims against state lands are not allowed. *See Pioneer Inv. & Trust Co. v. Board of Educ.*, 35 Utah 1, 99 P. 150, 152 (1909) ("It may be conceded that, as a general rule, adverse or prescriptive rights cannot be acquired as against the sovereign....").

¶ 14 However, the Estate argues that this general rule applies only to state lands that are held for public use. We recognize that there is support for such a distinction. *See Block v. North Dakota*, 461 U.S. 273, 295 n. 2, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) (O'Connor, J., dissenting) ("The case for protecting the sovereign from the running of time is weaker when the lands are held other than as public trust lands."); *Weber v. Board of Harbor Comm'rs*, 85 U.S. (18 Wall.) 57, 68, 21 L.Ed. 798 (1873) ("Where lands are held by the State simply for sale or other disposition, and not as sovereign in trust for the public, there is some reason in requiring the assertion of her rights within a limited period, when any portion of such lands is intruded upon, or occupied without her permission...."). And we further recognize that such a distinction is in harmony with the very policy behind the general rule. "[R]estrictions on adverse possession claims against states or their political subdivisions stem from the 'ancient doctrine' of *nullum tempus occurrit regi*, or 'time does not run against the king.'" *Nyman v. Anchor Dev., LLC*, 2003 UT 27, ¶ 10, 73 P.3d 357 (quoting *Devins v. Borough of Bogota*, 124 N.J. 570, 592 A.2d 199, 201–02 (1991)).

In this country, courts adopted the rule, not on the theory that an "impeccable" sovereign could not be guilty of laches, but because of the public policies served by the doctrine. The public interest in preserving public rights and property from injury and loss attributable to the negligence of public officers and agents, through whom the public must act, justified a special rule for the sovereign.

These policies reach their apex in the case of lands held in trust for the public. The interests of the sovereign, so widespread and varied, hinder it in the exercise of the vigilance in protecting rights that we require of private parties. Yet the public must not lose its rights because of the constraints on the sovereign.

*Block*, 461 U.S. at 294–95, 103 S.Ct. 1811 (O'Connor, J., dissenting); *see also id.* at 290, 103 S.Ct. 1811 (majority opinion) (explaining that the general rule "has retained its vigor because it serves the public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers").

¶ 15 But even assuming that the Estate is correct that the general rule applies only to certain state lands, there is simply no support for the Estate's contention that the general rule should apply only to state land that is *actually available* for the public to use as opposed to land simply *designated* for public use.[7] Indeed, we have previously stated the opposite: "[R]eal property designated as public use can only cease to be such by formal vacation.... The formal vacation rule applies regardless of whether property was actually used by the public or simply designated for public use in a particular dedication." *Fries v. Martin*, 2006 UT App 514,

**6.** The statute referenced by the trial court was Utah Code section 78–12–13. This section has since been renumbered, *see* Utah Code Ann. § 78B–2–216 amendment notes (2008), and because the relevant language remains unchanged, we cite to the current version as a convenience to the reader.

**7.** Although the condemnation order said that the condemned property was to be used for highway purposes, no part of the highway was built upon the subject property. But it is misleading for the Estate to set forth this fact as evidence that the subject property was not held for public use. Indeed, the reason that UDOT condemned more land than was actually needed for the highway was that Higley requested such action under the reasoning that otherwise the remaining tract of land (including the subject property) would be valueless. *See generally* Utah Code Ann. § 72–5–113 (2009) (providing that UDOT may condemn a whole block of property where the part of that block that is not necessary to acquire would be "of little value to its owner").

¶¶ 8–9, 154 P.3d 184.[8] Thus, where the original condemnation order decreed that the use of the property was a public use, and where it is apparently undisputed that no formal vacation has since taken place, the subject property is still held for the public use. Therefore, even assuming a public use limitation on the general rule, the property here remains subject to the general rule and rights to the subject property cannot be obtained through adverse possession.

### III. Equitable Claims

¶ 16 We also disagree with the Estate that several equitable theories should require UDOT to "refund" the amount of property taxes paid subsequent to the issuance of the condemnation judgment. The Estate fails to meet the legal requirements of all such theories.

██ ¶ 17 First, the theories of equitable estoppel and laches are unavailing because each would require some action or inaction on the part of UDOT that *caused* the unnecessary payment of the property taxes. *See CECO Corp. v. Concrete Specialists, Inc.,* 772 P.2d 967, 969–70 (Utah 1989) (setting forth equitable estoppel elements as "(i) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (ii) reasonable action or inaction by the other party taken or not taken *on the basis of* the first party's statement, admission, act, or failure to act; and (iii) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act" (emphasis added)); *Papanikolas Bros. Enters. v. Sugarhouse Shopping Ctr. Assocs.,* 535 P.2d 1256, 1260 (Utah 1975) (stating that laches requires establishing "(1) The lack of diligence on the part of plaintiff; [and] (2) An injury to defendant *owing to* such lack of diligence." (emphasis added)). Where Higley was well aware of the condemnation action and had actually received payment for the

condemned property, yet continued to pay the property taxes knowing or having reason to know that he had no obligation to do so, we do not see the causal relationship between the condemnation judgment's late recording and the property tax payments.

██ ¶ 18 Second, the Estate is not entitled to a refund under the "money had and received" theory. This argument is inadequately briefed for appeal, the Estate failing to even set forth what elements must be shown under this theory. *See generally* Utah R.App. P. 24(a)(9) (requiring the appellant's argument to "contain the contentions and reasons of the appellant with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on"). Further, it is clear from the title of the theory itself and the cases cited by UDOT that this theory is entirely inapplicable where UDOT was not a recipient of the property tax payments and is therefore in no position to refund them.[9] *See generally CIG Exploration, Inc. v. Hill,* 824 F.Supp. 1532, 1546 (D.Utah 1993) ("[A] claim for monies had and received is based on the theory that one has money in hand belonging to another which, in equity and with good conscience, should be paid over.").

██ ¶ 19 Third, the Estate's constructive trust argument and the underlying unjust enrichment claim, *see generally Rawlings v. Rawlings,* 2010 UT 52, ¶ 47 n. 62, 240 P.3d 754 ("[U]njust enrichment, in the traditional sense of an inequitable retention of benefits, will support imposition of a constructive trust, even absent wrongful conduct."), require a conferred benefit, the retention of which would be inequitable. *See Allen v. Hall,* 2006 UT 70, ¶ 26, 148 P.3d 939 (listing the elements of unjust enrichment as follows: "First, there must be a benefit conferred by one person on another. Second, the conferee must appreciate or have knowl-

8. The Estate argues that such case law is inapplicable because it discusses adverse possession against subdivisions of the State and not against the State itself. However, we see no reason to apply different rules to the State than we apply to other governmental entities when determining whether land is held for public use, particularly where the restrictions on adverse possession

claims against all of these entities originate from the same doctrine, *see Nyman v. Anchor Dev., LLC,* 2003 UT 27, ¶ 10, 73 P.3d 357.

9. Those amounts were instead tendered to Weber County, which is not a party to this suit.

edge of the benefit. Third, there must be acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."). Again, because the property taxes were paid to Weber County and not UDOT, and because UDOT would not have been required to pay such taxes, Higley and his successors conferred no benefit on UDOT. Thus, the Estate's unjust enrichment and constructive trust arguments fail.

## CONCLUSION

¶ 20 We determine that under the facts of this case there is no time limitation regarding the filing of a condemnation judgment with a county recorder's office and that the simple failure to do so within eight years does not preclude filing at a later date. We further determine that the Estate's claim under an adverse possession argument and its multiple equitable claims for a "refund" of property taxes paid, even accepting the facts as alleged by the Estate, are unavailing. We therefore affirm the judgment of the district court dismissing the action in its entirety.

¶ 21 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge and STEPHEN L. ROTH, Judge.